**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| 520 South Michigan Avenue Associates, Ltd., ) <br> d/b/a The Congress Plaza Hotel & Convention ) <br> Center, ) <br>  ) <br>          Plaintiff, ) <br>  ) <br> vs. ) <br>  ) <br> Alderman Robert Fioretti and ) <br> the City of Chicago ) <br>  ) <br>          Defendants. ) | Case No. 07 C 4245 <br><br> Judge Ronald Guzman |

**AMENDED COMPLAINT**

Plaintiff, 520 South Michigan Avenue Associates, Ltd., d/b/a The Congress Plaza Hotel & Convention Center ("Congress Hotel"), complains of Defendants, City of Chicago and Second Ward Alderman, Robert Fioretti, and for it's Complaint against Defendants, states as follows:

**NATURE OF THE ACTION**

1. Local 1 of the Hotel Employees and Restaurant Employees International Union ("HEREIU") is in a labor dispute with the Congress Hotel governed by the National Labor Relations Act, as amended, 29 USC §151, *et seq*. ("NLRA"), and since June 2003, Local 1 Congress Hotel employees have been striking in front of the Congress Hotel facilities.

2. The Congress Hotel seeks a writ of mandamus directing the City of Chicago to issue the necessary permits for the Congress Hotel's planned improvements to its property at 520 South Michigan Avenue, Chicago, Illinois involving a four story addition and a rooftop addition that includes a pool, restaurant and health club, along with the necessary permits for a sidewalk café.

3. The Congress Hotel also seeks a declaration that the City of Chicago's refusal to issue permits at the insistence of Alderman Fioretti is preempted by the Supremacy Clause of the United States Constitution.

4. The Congress Hotel further seeks a declaration that the refusal to issue permits violates the Congress Hotel's rights to due process and equal protection under the Fourteenth Amendment of the United State Constitution.

5. The Congress Hotel also seeks a permanent injunction prohibiting Defendants from interfering in its labor dispute with Local 1, HEREUI.

## JURISDICTION AND VENUE

6. The court has jurisdiction of the subject matter of this lawsuit pursuant to 28 U.S.C. §1331, 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 1983 in that this action arises under the Constitution and laws of the United States. Supplemental jurisdiction over the state law claims is pursuant to 28 USCS § 1367(a).

7. Venue is proper in this court under 28 U.S.C. §1391(b) in that at least one of the Defendants resides in this judicial district and all Defendants are residents of the State of Illinois.

## PARTIES

8. The Congress Hotel is a limited partnership with its headquarters and principal place of business in Chicago, Illinois where it is engaged, *inter alia*, in the hotel business at 520 South Michigan Avenue, Chicago, Illinois.

9. The Congress Hotel is an employer in an industry affecting commerce within the meaning of the NLRA.

10. Defendants are Robert Fioretti, Alderman of the Second Ward of the City of

Chicago, in his official capacity, and the City of Chicago.

## STATEMENT OF THE CLAIM

### Federal Labor Policy

11. In enacting the NLRA, Congress chose free collective bargaining between employers and the duly chosen representatives of their employees, subject to an extensive and delicately balanced federal regulatory scheme of rights and obligations, as the means of fostering labor-management peace and thereby preserving the free flow of goods in interstate commerce.

12. Under the NLRA, Congress protected certain conduct, prohibited certain conduct and left other conduct to the free play of the parties' respective economic forces. In deciding which forms of economic pressure were to be prohibited under the NLRA, Congress struck a carefully modulated balance between labor and management in their federal collective bargaining relationships.

13. Under the NLRA, the use of economic pressure by the parties to a labor dispute has long been recognized and approved by the National Labor Relations Board ("NLRB") and the federal courts, including the United States Supreme Court, as "part and parcel" of the process of free collective bargaining and Congress's overarching themes of federal labor policy.

14. Under the NLRA, both employers and unions have a federal statutory right to use economic pressure on each other, subject to a variety of complex and frequently interdependent federal statutory requirements and limitations which include the right to initiate and the right to withstand work stoppages in support of the parties' collective bargaining demands.

15. Under the NLRA, in the event of a work stoppage caused by a labor dispute, an employer such as the Congress Hotel has a federal statutory right to continue to operate its

affected facilities.

16. Under the NLRA and the *Machinists* pre-emption doctrine, states and municipalities are prohibited from regulating labor dispute activities and conduct that Congress intended to be unregulated because to do so would frustrate the effective implementation of the NLRA's processes and the interplay of economic and other forces and factors contemplated thereby.

**Local 1 Negotiations**

17. At all times material hereto, the Congress Hotel has recognized HEREIU and its affiliated Local Union Number 1 as the exclusive collective bargaining representative for approximately 130 of its employees at its facilities located in Cook County, Illinois.

18. The Congress Hotel is required to engage in the above-described collective bargaining process with HEREIU, Local 1 as a matter of federal law.

19. The Congress Hotel's current collective bargaining agreement with HEREIU, Local 1 expired by its terms on December 21, 2002.

20. The Congress Hotel is currently negotiating with HEREIU, Local 1 for a new collective bargaining agreement covering, *inter alia*, the hotel's employees and despite its best efforts, a work stoppage has ensued during these negotiations.

**Permit Application Process**

21. The Congress Hotel has engaged an architectural firm to prepare plans and drawings as part of the planned improvements to it Chicago hotel that will include a four story addition and a rooftop addition of a pool, health club and restaurant along with a sidewalk café.

22. Following the then Alderman of the Second Ward of the City of Chicago,

Madeline L. Haithcock's introduction of an ordinance before the City Council authorizing the permit, the City of Chicago on July 27, 2006 issued the Congress Hotel a sidewalk café permit authorizing the hotel to operate an outdoor café on its sidewalk outside its facility at 520 S. Michigan Ave., Chicago, Illinois for the period March 1, 2006 through December 1, 2006. See **Exhibit A**, attached hereto and made a part hereof.

23. Following the issuance of the permit, the Congress Hotel purchased tables and chairs and associated equipment necessary to operate the café and began operating the sidewalk café when on August 28, 2006, the City of Chicago issued a notice to the hotel cancelling the outdoor café permit, and ordering the hotel to cease and desist its operation. See **Exhibit B**, attached hereto and made a part hereof.

24. Although the city notified the hotel that then Alderman Haithcock had signed a new ordinance re-approving issuance of the sidewalk café permit (see **Exhibit C**, attached hereto and made a part hereof), on October 3, 2006, a city council committee rejected the hotel's application to continue the sidewalk café permit based on then Alderman Haithcock's recommendation not to allow the permit to be reinstated due to the insistence of HEREIU Local 1 and the hotel's refusal to concede to the union's demands at the bargaining table.

25. Under the Municipal Code of the City of Chicago, 10-28-820, permit applications that comply with the requirements of the city code and regulations regarding cafes are directed to the alderman of the affected ward who in turn, will introduce an ordinance before the city council for approval of the permit request.

26. The alderman of the affected ward has final authority over whether the café permit will issue in that if the Alderman refuses to approve the permit, an ordinance will not be

submitted to the city council for approving the café permit.

27.     On May 1, 2007, the hotel's architect wrote the then Alderman for the City of Chicago's Second Ward, Madeline L. Haithcock, requesting approval of the application to DCAPS Landmark's Department.   See **Exhibit D**, attached hereto and made a part hereof.

28.     On May 2, 2007, then Alderman Haithcock issued a letter to the Department of Planning and Development, Landmark's Division indicating that she had reviewed the plans for the planned improvements referenced above and that she had no objections to the necessary Landmark and DCAP permits, permits required for the hotel's planned improvements.  See **Exhibit E**, attached hereto and made a part hereof.

29.     On June 18, 2007, the hotel's architect wrote Shlomo Nahmias, President of the Congress Hotel, confirming the scheduling of a meeting requested by the new City of Chicago Second Ward Alderman, Robert Fioretti, the purpose of which was to discuss the planned improvements and the Alderman's approval letters for permits to proceed with the roof top addition and café and to "discuss the strike" with hotel officials.   See **Exhibit F**, attached hereto and made a part hereof.

30.     In the City of Chicago, the Alderman of the ward where building and construction takes place must approve the proposed construction plans before the various city departments will issue necessary and required permits.

31.     On July 9, 2007, the , President of the Congress Hotel met with Alderman Robert Fioretti at his office at 429 South Dearborn Street, Chicago, Illinois and at that meeting, Alderman Fioretti declared that "he would not issue or approve any permits for the Congress Hotel until the strike by Local 1, HEREIU is resolved" stating as a reason that "I made this

promise to the union before I was elected."

32. Indeed, Alderman Fioretti, a "labor-backed" Alderman candidate, is quoted in Local 1 literature as stating "[j]ust wait until [the Congress] hotel comes to us for a variance because they want to put a luxury park or a pool on the roof ... I know they have violations in there–we'll fine them for evrything!"

33. At the July 2007 meeting, Alderman Fioretti was advised that his position was improper and illegal and he responded that regardless, he was not changing his position since he promised the union he would support it in its labor dispute with the Congress Hotel and would not support or issue any permits for the Congress Hotel and concluded the meeting with the comment that the hotel should "do what you have to do."

34. The Alderman's and the City of Chicago's actions of conditioning permit approval on the hotel's settlement of its labor dispute with Local 1 interferes with well established federal labor law policies as set forth in the NLRA which purposely calls for the resolution of labor disputes to be left to the control of the free play of economic forces.

35. Defendants' insistence on the Congress Hotel's settlement of its labor dispute with Local 1 before agreeing to issue permits to which the hotel is otherwise qualified to receive has resulted in Defendants unlawfully entering into the substantive aspects of the labor dispute with Local 1.

36. Although the NLRA requires an employer and a union to bargain in good faith, it does not require them to reach agreement and does not purport to set any time limits on the negotiations or economic struggles.

37. The Congress Hotel has suffered and will continue to suffer harm as a result of the

actions of Alderman Fioretti and the City of Chicago since the hotel is operating in a competitive environment against other hotels and the Alderman and City of Chicago's refusal to issue permits because of their support for the union prevents the hotel from making necessary improvements placing it at a disadvantage with its competitors.

38. The Congress Hotel is further harmed by the City and Alderman Fioretti's refusal to issue building permits since the refusal affects the dynamics of collective bargaining and the hotel's ability to withstand economic pressure from the union, decreases the economic pressure the hotel is able to apply in support of the positions the hotel may take in the collective bargaining negotiations, and unlawfully favors the union by use of Defendants' local municipal authority and powers to interfere with Congress's intended federal labor policy that resolution of a labor disputes be left to free play of the parties' respective economic forces.

39. Except for obtaining the current Alderman's approval for the permits, which the departments responsible for issuing permits require before approving the issuance of building permits, the Congress Hotel has completed or is prepared to complete all the necessary steps and conditions to obtain the building permits.

## COUNT I
### Petition For Writ Of Mandamus

40. Plaintiff incorporates paragraphs 1 through 39 as paragraph 40 of Count I as if fully alleged herein.

41. The Congress Hotel possess a clear right to have the building permits approved and issued.

42. Defendants have the duty, responsibility, power and authority to approve and issue

8

building permits.

43. Without mandamus relief, Plaintiff will be irreparably harmed.

WHEREFORE Plaintiff prays that judgment be entered in its favor and against Defendants on Count I and that this court issue a writ of mandamus ordering the City of Chicago to issue building permits for the requested planned improvements, and for such further relief as the court deems equitable and just.

### COUNT II
### Declaratory Judgment

44. Plaintiff incorporates paragraphs 1 through 39 as paragraph 44 of Count II as if fully alleged herein.

45. An actual controversy exists between the parties.

WHEREFORE Plaintiff prays that judgment be entered in its favor and against Defendants on Count II and that the court enter an order:

(a) declaring that the City of Chicago's refusal to issue permits to the Congress Hotel and Alderman Fioretti's refusal to approve the permit application due to the Alderman's support of the union is unlawful, illegal, and pre-empted under the Supremacy Clause of the United States Constitution by the NLRA;

(b) declaring that Alderman Fioretti's and the City of Chicago's refusal to issue permits in support of the union violates the Congress Hotel's rights under the NLRA in violation of 42 U.S.C. § 1983 and violates the Congress Hotel's rights to due process and equal protection under the fourteenth Amendment of the United States Constitution in violation of 42 U.S.C. § 1983;

(c) declaring that the Congress Hotel is entitled to costs, including its reasonable attorneys' fees, together with such other relief as the Court deems just and equitable.

### COUNT III
### Section 1983

46. Plaintiff incorporates paragraphs 1 through 39 as paragraph 46 of Count III as if

9

fully alleged herein.

47.     Defendants, under the color of ordinance, regulation, custom, or usage, has subjected the Congress Hotel to the deprivation of rights, privileges, or immunities secured by the Constitution and laws, and pursuant to 42 USCS § 1983, are liable to the Congress Hotel in an action at law and equity and under 42 USCS § 1988, liable for the Congress Hotel's attorneys fees and cost.

WHEREFORE Plaintiff prays that judgment be entered in its favor and against Defendants on Count III and that the court enter an order awarding Plaintiff compensatory and punitive damages, attorneys fees and costs, and such other relief as the Court deems just and equitable.

## COUNT IV
### Injunctive Relief

48.     Plaintiff incorporates paragraphs 1 through 39 and 47 as paragraph 48 of Count IV as if fully alleged herein.

49.     The Congress Hotel enjoys a likelihood on the merits of its claims.

50.     The Congress Hotel does not possess an adequate remedy at law and irreparable harm will result if preliminary relief is denied.

51.     The balance of equities lie in favor of the Congress Hotel.

WHEREFORE Plaintiff prays that judgment be entered in its favor and against Defendants on Count IV and that the court enter an order awarding Plaintiff the following relief:

A.      For a permanent and preliminary injunction restraining Defendants from:

   1.   Conditioning and refusing to issue permits to the Congress Hotel until it has come to agreement with Local 1 in its underlying labor dispute;
   2.   Violating the Congress Hotel's Constitutional rights;

   3. Refusing to issue the Congress Hotel permits required to carry out its planned building improvements and sidewalk café;

   4. Otherwise illegally interfering with the Congress Hotel's labor dispute with Local 1.

 B. For an award of attorneys fees and costs; and

 C. For such other and further relief as in equity may be just and proper.

       Respectfully submitted,
       **Congress Plaza Hotel & Convention Center**


       By: /s/ Bradley Wartman
         One of its attorneys

Peter Andjelkovich, Esq.
Bradley Wartman, Esq.
Peter Andjelkovich & Associates
39 South LaSalle Street, Suite 200
Chicago, IL 60603
312/782-8345

11