IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | |
|---|---|
| 520 SOUTH MICHIGAN AVENUE ASSOCIATES, LTD., d/b/a THE CONGRESS PLAZA HOTEL & CONVENTION CENTER, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | )      07 C 4245 ) |
| ALDERMAN ROBERT FIORETTI and THE CITY OF CHICAGO, | )      Judge Ronald A. Guzmán ) ) ) |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Alderman Robert Fioretti and the City of Chicago denied Congress Hotel building permits for a sidewalk café, four-story addition and a rooftop addition that includes a pool, restaurant and health club. Congress Hotel has sued Fioretti in his official capacity and the City for: (1) violating its due process and equal protection rights as guaranteed under the Fourteenth Amendment to the U.S. Constitution pursuant to 42 U.S.C. § ("section") 1983; (2) a declaration that defendants' denial of the permits violates section 1983 and such denial is a violation of the Supremacy Clause and preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*; (3) an injunction to restrain defendants from, among other things, interfering with its ongoing negotiations with Local 1; and (4) a writ of mandamus pursuant to Illinois law ordering the City of Chicago to issue permits for the planned improvements. Before the Court is defendants' motion to dismiss the Amended Complaint. For the reasons provided herein, the Court grants in part and denies in part the motion.

**FACTS**

Congress Hotel, located at 520 South Michigan Avenue in Chicago, Illinois, has been negotiating a new collective bargaining agreement with the Hotel Employees and Restaurant Employees International Union, Local 1 ("Local 1") since its old one expired on December 21, 2002. (Am. Compl. ¶¶ 1, 19-20.) A work stoppage has ensued during these negotiations. (*Id.* ¶ 20.)

Congress Hotel hired an architectural firm to prepare plans and drawings as part of its planned improvements that will include a sidewalk café, a four-story addition, and a one-story rooftop addition of a pool, health club and restaurant. (*Id.* ¶ 21.) On June 28, 2006, then-Alderman Madeline L. Haithcock introduced an ordinance authorizing Congress Hotel's sidewalk café permit. (*Id.* ¶ 22.) On July 27, 2006, the City of Chicago issued a permit pending passage of the ordinance that authorized Congress Hotel to operate a sidewalk café from March 1, 2006 through December 1, 2006. (*Id.* ¶ 22; *id.*, Ex. A, Sidewalk Café Permit (Pending Passage).) The permit stated that it was revocable "by the Director of Business Affairs and Licensing at any time." (*Id.*, Ex. A, Sidewalk Café Permit (Pending Passage).) After the permit was issued, Congress Hotel purchased tables, chairs and other equipment necessary and began operating the sidewalk café. (*Id.* ¶ 23.) On August 28, 2006, the City's Department of Business Affairs and Licensing notified Congress Hotel of its cancellation of the sidewalk café permit and ordered the hotel to cease and desist operation of the café. (*Id.*; *id.*, Ex. B, Cease and Desist Order.) On September 19, 2006, Thomas R. Allen, Chairman of the Committee on Transportation and Public Way, requested that Scott V. Bruner, Director of the Department of

Business Affairs & Licensing, issue the appropriate permits for the sidewalk café pending passage of the ordinance in Allen's committee. (*Id.*, Ex. C, Letter of 9/19/06 from Allen to Bruner.)

Haithcock introduced a new ordinance re-approving the issuance of the sidewalk café permit. (*Id.* ¶ 24.) On October 3, 2006, however, a city council committee rejected the hotel's application to continue the sidewalk café permit based on Haithcock's recommendation to reject the permit. (*Id.*) Congress Hotel alleges that Haithcock recommended to reject the permit at the insistence of Local 1 because Congress Hotel refused to concede to Local 1's demands during labor negotiations. (*Id.*)

In April 2007, Haithcock lost the aldermanic election for the second ward. (*Id.* ¶ 29.) However, she continued to serve as alderman for the remainder of her term. (*Id.*)

On May 1, 2007, Congress Hotel's architect requested Haithcock's approval of Congress Hotel's application to the Department of Construction and Permits ("DCAP"), Landmarks Division, regarding the one-story roof top recreation and food service addition, rear south tower four-story addition, and ground floor restaurant with outside seating. (*Id.* ¶ 27.) On May 2, 2007, Haithcock stated in a letter to Brian Goeken, Deputy Commissioner of the Department of Planning and Development Landmarks Division, that she had reviewed Congress Hotel's plans and had no objections to the necessary permits. (*Id.* ¶ 27; *id.*, Ex. E, Letter of 5/2/07 from Haithcock to Goeken.)

In late May 2007, newly elected Alderman Robert Fioretti began his four-year aldermanic term. (*Id.* ¶ 29.) On July 9, 2007, at a meeting with Congress Hotel's President, Fioretti declared that he would not issue or approve any permits for the Congress Hotel until the

3

strike by Local 1 was resolved because he made a promise to the union before he was elected

alderman. (*Id.* ¶ 31.) Although Fioretti was advised at the meeting that his position was

improper and illegal, he stated that he was not changing his position because he promised Local

1 he would support it in its labor negotiation with the Congress Hotel. (*Id.* ¶ 33.) Fioretti

concluded the meeting by stating that the hotel should "do what you have to do." (*Id.*)

Fioretti is allegedly quoted in Local 1 literature as stating "Just wait until [the Congress]

hotel comes to us for a variance because they want to put a luxury park or pool on the roof . . . I

know they have violations in there– we'll fine them for everything!" (*Id.* ¶ 32.) Defendants

insist that Congress Hotel must settle its labor negotiation with Local 1 before they will issue

permits that Congress Hotel is otherwise qualified to obtain. (*Id.* ¶ 35.)

It is the custom and practice of the City of Chicago that the alderman of the affected ward

has original authority to determine who may obtain a permit. (*Id.* ¶ 26.) It is also the custom

and practice of the City of Chicago that if an alderman refuses to approve a permit, it is

impossible for an applicant to obtain a permit through any other means because no other

alderman will submit an ordinance for approval of the permit to the City Council. (*Id.*)


## Discussion

"A plaintiff's complaint need only provide a 'short and plain statement of the claim

showing that the pleader is entitled to relief' that is also sufficient to provide the defendant with

'fair notice' of the claim and its basis." *Windy City Metal Fabricators & Supply, Inc. v. CIT*

*Technical Fin. Servs., Inc.*, 536 F.3d 663, 667 (7th Cir. 2008) (quoting *Bell Atl. Corp. v.*

*Twombly*, 127 S.Ct. 1955, 1964 (2007), and Fed. R. Civ. P. 8(a)(2)). "In order to demonstrate

that he is entitled to relief, however, the pleader must show through his allegations that it is

plausible, rather than merely speculative, that he is entitled to relief." *Id.* (quotation omitted).

## I. NLRA Preemption

Defendants argue that Congress Hotel fails to state a claim for a violation of the

Constitution's Supremacy Clause, which provides in pertinent part that "the Laws of the United

States . . . shall be the Supreme Law of the land." *See* U.S. Const., art. VI, cl. 2. "This provision

invalidates all state laws that conflict or interfere with acts of Congress." *Cannon v. Edgar*, 33

F.3d 880, 883 (7th Cir. 1994).

In this case, Congress Hotel alleges that defendants' conditioning the issuance of permits

on Congress Hotel's settlement of its labor negotiations with Local 1 violates the NLRA.[1] To

determine whether the NLRA preempts defendants' quasi-regulatory action, the court must

decide if Congress intended its act to preempt such action. *See id.* "The NLRA reflects

congressional intent to create a uniform, national body of labor law interpreted and administered

by a centralized agency, the National Labor Relations Board [("NLRB")]." *Id.* The act

"requires both employers and self-organized (that is, unionized) employees to bargain in good

faith." *Id.* However, the NLRA "does not require that the parties reach an agreement. Instead,

it leaves the bargaining process largely to the parties." *Id.* at 884.

The Supreme Court has created two preemption doctrines with regard to the NLRA.

"The first, *Garmon* preemption, forbids state and local regulation of activities that the NLRA

---

[1]

Preemption analysis is not affected by the fact that a plaintiff challenges a city's actions
rather than state law. *Fisher v. Berkeley*, 475 U.S. 260, 265 (1986). The fact that a city acts
through "procedures rather than a court order or general law also is irrelevant to our analysis."
*Golden State Transit Corp. v. Los Angeles*, 475 U.S. 608, 615 n.5 (1986)

protects or prohibits or arguably protects or prohibits" and "is designed to prevent conflict

between state and local regulation and Congress' integrated scheme of regulation embodied in 29

U.S.C. §§ 157 & 158." *Id.*; *see San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236,

244-45 (1959). "[T]he *Garmon* rule prevents States not only from setting forth standards of

conduct inconsistent with the substantive requirements of the NLRA, but also from providing

their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by the

Act." *Wis. Dep't of Indus., Labor & Human Relations v. Gould, Inc.*, 475 U.S. 282, 286

(1986).[2]Garmon preemption "protects the primary jurisdiction of the National Labor Relations

Board." *Evans v. Chi. Football Franchise Ltd. P'ship*, No. 86 C 10225, 1987 WL 18354, at *3

(N.D. Ill. Oct. 9, 1987). "When an activity is arguably subject to § 7 or § 8 of the Act, the States

as well as the federal courts must defer to the exclusive competence of the National Labor

Relations Board if the danger of state interference with national policy is to be averted."

*Garmon*, 359 U.S. at 245.

Although plaintiff states that *Garmon* preemption applies, it fails to point to any

particular provision of 29 U.S.C. § 157 or § 158 that would arguably be in conflict with the

defendants' conditioning the issuance of permits on a labor negotiation settlement. However,

because *Garmon* preemption is a jurisdictional issue, *see Amalgamated Ass'n of Street, Electric

Railway & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 276 (1971), and thus never

---

[2]

 "A claim is not preempted under *Garmon* if the regulated activity is (1) merely of peripheral concern to the federal labor laws or (2) touches interests deeply rooted in local feeling and responsibility." *Cannon*, 33 F.3d at 884. To determine whether either exception applies, "the state's interest in remedying the effects of the challenged conduct must be balanced against both the interference with the . . . NLRB['s] ability to adjudicate the controversy and the risk that the state will approve conduct that the NLRA prohibits." *Kolentus v. Avco Corp.*, 798 F.2d 949, 961 (7th Cir. 1986). Defendants do not argue that either exception applies.

waived, *see Worth v. Tyer*, 276 F.3d 249, 259 (7th Cir. 2001), the Court must decide, unaided by

plaintiff, whether this Court has jurisdiction or whether the exclusive jurisdiction lies with the

NLRB.

     29 U.S.C. § 158(d) provides that "the mutual obligation of the employer and the

representative of the employees to . . . confer in good faith . . . . does not compel either party to

agree to a proposal or require the making of a concession." Thus, the question becomes whether

defendants' conditioning the issuance of permits on the settlement of labor negotiations conflicts

with this provision of the NLRA.

     "[T]he mere fact that a state statute pertains to matters over which the parties are free to

bargain cannot support a claim of preemption, for 'there is nothing in the NLRA . . . which

expressly forecloses all state regulatory power with respect to those issues . . . that may be the

subject of collective bargaining.'" *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 21-22

(1987) (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504-05 (1978)). Where the parties

remain free to negotiate the actual terms of the collective bargaining agreement beyond baseline

minimum labor standards, *Garmon* preemption is inapplicable. *See 520 S. Mich. Ave. Assocs. v.*

*Shannon*, No. 06 C 4552, 2007 WL 2728757, at *5 (N.D. Ill. Sept. 17, 2007).

     Given that defendants' conditioning the issuance of permits on settlement of the labor

negotiations still leaves Congress Hotel and Local 1 free to negotiate the actual terms of the

collective bargaining agreement, the Court concludes that the permit ordinances as applied do

not conflict with 29 U.S.C. § 158(d). *See Golden State Transit Corp.*, 475 U.S. at 615 n.4

(stating without analysis that city's action of conditioning the renewal of a taxi-cab franchise on

settlement of labor negotiations was not preempted under *Garmon*). This is not a situation in

7

which the government dictates that the collective bargaining agreement include specific

substantive conditions, *see Cannon*, 33 F.3d at 882, or eliminate the bargaining process

altogether, *see Commonwealth Edison v. Int'l Bhd. of Elec. Workers, Local Union No. 15*, 961 F.

Supp. 1169, 1180 (N.D. Ill. 1997). Accordingly, the Court holds that plaintiff has failed to state

a claim that defendants' conditioning the issuance of permits on the settlement of plaintiff's

labor negotiation with Local 1 is preempted under *Garmon*, and dismisses this claim without

prejudice.

The second preemption doctrine, *Machinists* preemption, "preempts regulations that do

not impinge on the protections and prohibitions of sections 7 and 8, but rather interfere with the

NLRA's plan to leave certain areas unregulated, whether by the states or even by the NLRB."

*Healthcare Ass'n of N.Y. State, Inc. v. Pataki*, 471 F.3d 87, 94 (2d Cir. 2006); *see Golden State*

*Transit Corp.*, 475 U.S. at 615-19; *Machinists v. Wis. Employment Relations Comm'n*, 427 U.S.

132, 147 (1976); *Cannon*, 33 F.3d at 885. "By protecting against state interference with policies

implicated by the structure of the NLRA, *Machinists* preemption preserves Congress' intentional

balance between the power of management and labor to further their respective interests by use

of their respective economic weapons." *Cannon*, 33 F.3d at 885. "States are therefore

prohibited from imposing additional restrictions on economic weapons of self-help, such as

strikes or lockouts . . . unless such restrictions presumably were contemplated by Congress."

*Golden State*, 475 U.S. at 614.

Defendants says the contention that they used the permit process to interfere with

plaintiff's negotiations with Local 1 is too speculative to support Art. III standing because, until

plaintiff actually takes all of the steps necessary to obtain a permit, the fate of its permit

application is unknown  The Court disagrees.  Congress Hotel alleges Alderman Fioretti stated that he will not approve any permit on the hotel's behalf unless it settles its labor negotiation with Local 1 and that if the hotel seeks a permit, he will instigate an investigation into any possible code violations and slap it with fines.  Congress Hotel has alleged that despite the language of city ordinances stating that the Commission on Chicago Landmarks ("Landmarks Commission"), Chicago Plan Commission, the Department of Planning and Development, the Executive Director of Building and Construction department and the Director of Business Affairs and Licensing determine whether permits will issue, defendants' custom and practice is that the alderman of the affected ward, *e.g.*, Fioretti, acts as a gatekeeper and the issuance of a permit is impossible without his approval.  So, Congress Hotel alleges that, without Fioretti's blessing, it is incapable of obtaining approval of a permit from any applicable City authority. These allegations are sufficient to take the complaint beyond the speculative level.

In *Golden State Transit Corp.*, 475 U.S. at 615-19, the Supreme Court held that *Machinists* preemption precluded Los Angeles from conditioning the renewal of a taxicab franchise on the settlement of a labor negotiation.  However, the Supreme Court emphasized that its "holding does not require a city to renew or to refuse to renew any particular franchise.  We hold only that a city cannot condition a franchise renewal in a way that intrudes into the collective-bargaining process." *Id.* at 619.

Similarly, because plaintiff has alleged that defendants are conditioning the issuance of permits on its settlement of labor negotiations with Local 1, it has sufficiently stated a claim for the application of *Machinists* preemption.  In addition, as in *Golden State*, even if plaintiff ultimately prevails on summary judgment or at trial in establishing *Machinists* preemption, this

Court's holding will not require defendants to issue any particular permit, but will merely hold

that defendants cannot condition the issuance of permits in a way that intrudes into the labor

negotiations between plaintiff and Local 1. That being said, the Court denies defendants' motion

to dismiss plaintiff's claim that defendants' conditioning the issuance of permit on the settlement

of the labor negotiation is subject to *Machinists* preemption.

**II.  Section 1983**

Next, the City and Fioretti, who is sued in his official capacity, argue that Congress Hotel

fails to state a section 1983 claim because it has failed to allege that a deprivation of

constitutional rights occurred as a result of City policy. The Court disagrees.

"Actions against individual defendants in their official capacities are treated as suits

brought against the government entity itself." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir.

2008). A governmental entity is not liable under section 1983 "unless the deprivation of

constitutional rights is caused by its own policy or custom." *Id.*; *see Monell v. Dep't of Soc.

Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978). A plaintiff may satisfy this requirement by

alleging: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a

widespread practice, that, although unauthorized, is so permanent and well-settled that it

constitutes a 'custom or usage' with the force of law; or (3) an allegation that a person with final

policymaking authority caused the injury." *Chortek v. City of Milwaukee*, 356 F.3d 740, 748

(7th Cir. 2004). In order to identify an official who has final policymaking authority for the

municipality regarding the action alleged to have caused the constitutional violation, a court

must "[r]eview[] the relevant legal materials, including state and local positive law, as well as

10

custom or usage having the force of law." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737

(1989) (quotation and citation omitted).

Again, defendants rely on City ordinances which state that the Landmarks Commission,

Plan Commission, Department of Planning and Development and Department of Business

Affairs and Licensing have final authority with regard to the approval of permits. However,

Congress Hotel alleges that the ordinances *as applied* have deprived it of its constitutional rights.

In other words, Congress Hotel alleges that although the ordinances state that the Landmarks

Commission, Plan Commission and Department of Planning and Development must approve the

plans for additions or alterations to buildings within the City's landmark districts and that the

Department of Business Affairs and Licensing has the authority to issue or revoke use-of-public-

way permits, defendants' customary practice is that those entities withhold approval of any

permit absent the affected alderman's support. This allegation sufficiently states a custom and

usage with the force of law. Further, Congress Hotel alleges that under defendants' custom and

usage, an alderman is a final policymaking authority because an alderman's withholding of

support makes approval of a permit unobtainable.

Having determined that the allegations sufficiently allege a custom pursuant to *Monell*,

the Court next considers whether plaintiff states a claim for a violation of due process and equal

protection. The Court addresses each in turn.

"The threshold test in determining whether a plaintiff has established either a substantive

or procedural due process violation under section 1983 is showing that the plaintiff had been

denied a constitutionally protected property interest." *Lanna Overseas Shipping, Inc. v. City of

Chi.*, No. 96 C 3373, 1997 WL 587662, at *8 (N.D. Ill. June 5, 1996). "To have a property

11

interest in a benefit, a person clearly must have more than an abstract need or desire for it. He

must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of

entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Property

interests "are created and their dimensions are defined by existing rules or understandings that

stem from an independent source such as state law." *Id.* "However, a property right is only

created [in a permit only] if the municipality, under state law or ordinance, lacks discretion and

must allow a grantee to retain the permit once the grantee has fulfilled the requirements." *Lanna

Overseas Shipping*, 1997 WL 587662, at *8. "[P]roperty is what is securely and durably yours

under state . . . law, as distinct from what you hold subject to so many conditions as to make

your interest meager, transitory, or uncertain . . . ." *Reed v. Vill. of Shorewood*, 704 F.2d 943,

948 (7th Cir. 1983).

Defendants argue that obtaining a permit for an addition or alteration of a building in a

landmark district requires discretionary approval by the Commission on Chicago Landmarks,

Chicago Plan Commission and other City departments, and therefore Congress Hotel lacks a

property interest in the building permits. The Court agrees.

The applicable ordinances clearly afford the various City commissions and departments

discretion to approve, disapprove or revoke a permit. *See, e.g.,* Mun. Code 2-120-740 (stating

that no permit shall issue without the approval of the Landmarks Commission); *id.* 2-120-760

(stating that Landmarks Commission shall issue a preliminary decision approving or

disapproving the application); *id.* 2-120-770 (stating that upon Landmarks Commission's

preliminary approval, the City department "shall proceed . . . with its own review of the

application"); *id.* 2-120-790 (stating that after receiving Landmarks Commission's preliminary

disapproval, applicant may request in writing an informal conference); *id.* 2-120-800 (stating that

if Landmarks Commission and applicant fail to reach accord during informal conference or if

applicant does not request an informal conference, the Landmarks Commission shall hold a

public hearing and issue a final written decision approving or disapproving the permit

application); *id.* 2-120-810 (stating that final decision is appealable to the Circuit Court of the

Cook County under the Illinois Administrative Review Act); *id.* 16-4-110 (stating that the

Commissioner of the Department of Planning and Development must forward every proposal or

application to the Chicago Plan Commission and to any other appropriate agency); *id.* 16-4-100

(stating that the Chicago Plan Commission must approve or disapprove the proposed

application); *id.* 13-32-040 (stating that the Executive Director of Building and Construction

Department examines and approves drawings and plans for the construction, alteration of or

addition to any building for which a permit is required); *id.* 2-21-060(f), 2-21-065 (stating that

the Department of Business Affairs and Licensing has authority to issue and rescind public way

use permits in accordance with Municipal Code); (Am. Compl., Ex. A, Sidewalk Café Permit

(Pending Passage) (stating that "THIS PERMIT IS REVOCABLE by the Director of Business

Affairs and Licensing at any time")); (Defs.' Mem. Supp. Mot. Dismiss, Ex. A, Historic

Michigan Boulevard District Landmark Status Ordinance).  Because these ordinances lack any

language that would deprive the authorities of their discretion with regard to the issuance or

revocation of permits, these ordinances do not give rise to a property interest in the building

permits.

   Further, plaintiff does not argue that the ordinances as applied give rise to a property

interest.  For instance, plaintiff does not argue that because ousted alderman Madeline L.

Haithcock initially supported plaintiff's plans requiring permits, it stripped the newly elected

alderman Fioretti of all discretion with regard to whether a permit would issue. Plaintiff alleges

that it is the custom and practice of the City of Chicago that the alderman of the affected ward

has original authority to determine who may obtain permits. (Am. Compl. ¶ 26.) Because

Fioretti is the alderman of the affected ward, plaintiff alleges that he has original authority to

determine who may obtain permits, not Haithcock. In essence, plaintiff alleges that Fioretti's

exercise of discretion to withhold his support of building permits prompted this litigation.

Further, the Department of Business Affairs and Licensing has authority to issue and rescind

public-way-use permits and Congress Hotel's sidewalk café permit (pending passage of the

ordinance) itself stated that it was revocable by the Director of Business Affairs and Licensing at

any time. Mun. Code § 2-21-060(f), 2-21-065; (Am. Compl., Ex. A, Sidewalk Café Permit

(Pending Passage)). Given the facts as alleged and the applicable law, plaintiff has alleged

nothing more than a unilateral expectation of permits, rather than legitimate claim of entitlement

to them.

In sum, based on the facts as alleged in the complaint, Congress Hotel does not have a

constitutionally protected property interest in the building permits it seeks. Accordingly, the

Court grants defendants' motion to dismiss plaintiff's claims based on a violation of due process

and dismisses these claims without prejudice.

Next, defendants argue that plaintiff has failed to state an equal protection claim based on

a "class of one" theory. One way to plead an equal protection violation is to allege that "the

defendant deliberately sought to deprive [the plaintiff] of the equal protection of the laws for

reasons of a personal nature unrelated to the duties of the defendant's position." *Hilton v. City of*

*Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000). Congress Hotel has alleged that defendants have

deprived it of the equal protection of the laws for reasons unrelated to their duty to ensure

building safety and preserve the status of the Historic Michigan Boulevard District. (Am.

Compl. ¶¶ 31-35.) Congress Hotel alleges that Fioretti refuses to approve any of its permit

requests solely because he promised Local 1 he would support it in its labor negotiation with the

Congress Hotel prior to being elected alderman. (*Id.*) These allegations, together with the

allegation that Fioretti, in effect, is the final policymaking authority with regard to whether a

permit will issue, are sufficient to state a "class of one" equal protection claim against

defendants. Therefore, the Court denies defendants' motion to dismiss plaintiff's claims based

on the alleged violation of its equal protection rights.

However, the Court agrees that plaintiff's request for punitive damages in the amended

complaint must be stricken. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259-60

(1981) (holding that municipality is immune from liability for punitive damages under section

1983). The Court grants defendants' motion to dismiss plaintiff's section 1983 equal protection

claim to the extent that it seeks punitive damages from the City and Fioretti, who has been sued

solely in his official capacity.

### III.  Writ of Mandamus and Injunctive Relief

Lastly, defendants move to dismiss plaintiff's petition for writ of mandamus pursuant to

Illinois law as well as plaintiff's request for injunctive relief. The Court addresses each in turn.

Federal courts have "no jurisdiction to issue a mandamus against state officials for

violating their duties under state law." *Coniston Corp. v. Vill. of Hoffman Estates*, 844 F.2d 461,

469 (7th Cir. 1988); *see Jones v. Burris*, 825 F. Supp. 860, 861 (N.D. Ill. 1993) (dismissing state

prisoner's petition for mandamus).[3] "The interference with the operation of state government

from such a mandamus would be disproportionate to the need, which can be satisfied perfectly

well (if perhaps with some loss of convenience) by proceeding in state court." *Id.* "The

interference would be even greater than that caused by the usual injunction-and the Supreme

Court has held that the federal courts' pendent jurisdiction may not be used as a basis for

enjoining state officials from violating state law." *Id.* (citing *Pennhurst State Sch. & Hosp. v.*

*Halderman*, 465 U.S. 89, 106 (1984)). "[I]t is difficult to think of a greater intrusion on state

sovereignty than when a federal court instructs state officials on how to conform their conduct to

state law." *Pennhurst*, 465 U.S. at 106 (holding that Eleventh Amendment bars a federal court

from considering a pendent state law claim against state officials).

   This Court lacks jurisdiction to issue a mandamus compelling defendants to grant

Congress Hotel's requested permits.  Thus, the Court grants defendants' motion to

dismiss plaintiff's claim for a writ of mandamus and dismisses the claim without

prejudice.

   With regard to injunctive relief, defendants solely argue that plaintiff's injury is too

speculative to satisfy Article III standing because the entities have not yet disapproved its permit

requests.  As discussed above, plaintiff alleges that Fioretti stated he will not approve Congress

Hotel's permit requests unless it settles its labor negotiation with Local 1 and without Fioretti's

approval, no other entity will approve the requested permits.  This makes the challenged official

---

[3]

   Although plaintiff has sought mandamus based on state law, it would likely fare no better
if it had sought mandamus pursuant to section 1983.  *See Flower Cab Co. v. Petitte*, 685 F.2d
192, 193 (7th Cir. 1982).

conduct and injury immediate. Further, Fioretti also stated that if the hotel seeks a permit, he

will instigate an investigation into any possible code violations and issue fines. This allegation

shows that there is a real and immediate threat of repeated injury should Congress Hotel

continue its pursuit of the permits via the required avenues. Because plaintiff has alleged a

concrete injury and continuing adverse effects, the Court denies defendants' motion to dismiss

plaintiff's claim for injunctive relief.


## Conclusion

For the foregoing reasons, the Court grants in part and denies in part defendants' motion

to dismiss [doc. no. 28]. The Court grants the motion with regard to plaintiff's: (1) claim that

defendants' conditioning the issuance of permits on settlement of plaintiff's labor negotiations is

preempted under *Garmon*; (2) claims based on the alleged violation of due process; (3) request

for punitive damages under section 1983; and (4) petition for writ of mandamus. The Court

dismisses the above claims without prejudice. The Court denies the motion with regard to

plaintiff's: (1) claim that defendants' conditioning the issuance of permits on settlement of

plaintiff's labor negotiations is preempted under *Machinists*; (2) claims based on the alleged

violation of equal protection; and (3) claim for injunctive relief based on the causes of action that

remain.

**SO ORDERED**                                    **ENTERED:**

**11/5/08**

_____

**RONALD A. GUZMAN U.S. District Judge**


17