

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

520 South Michigan Avenue Associates, Ltd.,        )
d/b/a The Congress Plaza Hotel & Convention        )
Center,                                            )
                                                   )
                              Plaintiff,           )
                                                   )        Case No. 07 C 4245
                    vs.                            )
                                                   )        Judge Ronald Guzman
Alderman Robert Fioretti and                       )
the City of Chicago                                )
                                                   )
                              Defendants.          )

**PROPOSED FINAL PRETRIAL ORDER**

This matter having come before the court at a pretrial conference held pursuant to Fed. R.

Civ. P. ("Rule") 16, and Peter Andjelkovich, Esq. and Bradley Wartman, Esq. of Peter

Andjelkovich & Associates, 39 South LaSalle Street, Suite 200 Chicago, IL 60603, 312-782-

8345 having appeared as counsel for Plaintiff, and Karen M. Dorff and Andrew W. Worseck,

City of Chicago, Department of Law, 30 North LaSalle, Suite 1230, Chicago, IL 60602, 312-

744-0740/7129 having appeared as counsel for Defendants, the following actions were taken:

1. **Jurisdiction**

This is an action seeking a declaratory judgment and injunctive relief to bar Defendants

from conditioning the granting of permits on Plaintiff's resolution of its labor dispute as a

violation of the Supremacy Clause of the United States Constitution and the jurisdiction of the

court is invoked under 28 U.S.C. §1331, 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 1983.[1]

Jurisdiction is not disputed except with respect to Defendants' Affirmative Defenses asserted in

---

[1] Plaintiff also sought mandamus relief and invoked jurisdiction under 28 USCS § 1367(a). However, in its ruling on Defendants' motion to dismiss dated November 5, 2008, this court dismissed Plaintiff's claim for mandamus relief.

their Answer, including their First Affirmative Defense that res judicata bars all causes of action and forms of relief sought herein regarding the Plan Commission's decision on the Rooftop Improvements application and the subsequent state court litigation thereon.

### 2. Stipulations and Statements

The following stipulations and statements were submitted and are attached to and made a part of this Order:

(a)     Joint Stipulation/Statement of Uncontested facts **(Statement A)**

(b)     This proceeding involves a bench trial so a short agreed description of the case to be read to prospective jurors will not be provided.

(c)     Trial Exhibits, excluding exhibits to be used for rebuttal **(Statements C)**.  These include (1) all marked for identification exhibits, including documents, summaries, charts and other items expected to be offered in evidence and (2) any demonstrative evidence and experiments to be offered during trial.

(d)     Name and addresses of the potential witnesses to be called by each party, with a statement of any objections to calling, or to the qualifications of, any witness identified on the list **(Statements D)**

e)     Experts:

(1)     Plaintiff's Expert:

*Bernard I. Citron.* Mr. Citron is an attorney concentrating his practice since 1986 in land use and zoning involving projects which seek the approval of all requisite entitlements for all sizes of development projects within the City of Chicago. His practice includes regular appearances before the City of Chicago's Zoning Department, Zoning Board of Appeals, Chicago Plan Commission, Zoning Committee of the City Council, Committee on Transportation, Real Estate

2

and Finance. Mr. Citron will offer his opinion testimony on matters relating to the historical

procedures followed within the City of Chicago to obtain approval for changes involving zoning

amendments, vacations or use of streets and alleys and use of public right of ways, building

permits, approval within the Planning Commission, use and changes to signage. See Plaintiff's

Rule 26(a)(2) Initial Discovery Disclosures. Since the matter will be tried as part of a bench trial,

the statement of qualifications to be read to the jury is inapplicable.

(2)     Defendants' Expert: None. Defendants have moved *in limine* to bar the

expert testimony of Mr. Citron.

(f)     The following depositions, and designated page and line numbers, are to be read

into evidence. The opposing parties' statements of objections are set forth thereto: None at this

time, but Defendants reserve the right to seek designations of portions of the deposition

transcript of Madeline Haithcock, a listed witness for Plaintiff, should Plaintiff not call her.

(g)     Plaintiff's itemized statement of damages. (**Statement G**)

(h)     This case involves a bench trial and therefore, the parties will not be providing

proposed jury instructions, verdict forms and special interrogatories, and voir dire questions for

prospective jurors;

(i)     each party has completed discovery, including the depositions of expert

witnesses. Absent good cause shown, no further discovery shall be permitted; and

(j)     subject to full compliance with all the procedural requirements of Rule 37(a)(2),

the following is a brief summary of intended motions in limine: (**Statement J**). Briefs in support

of and responses to such motions shall be filed as directed by the Court;

(k)     agreed statement, or statements by each party, of the contested issues of fact and

law and a statement or statements of contested issues of fact or law not agreed to. (**Statements**

3

K).

      (1)    waivers of any claims or defenses that have been abandoned by any party: none.

      (m)*   for a non-jury trial, each party shall provide proposed Findings of Fact and

Conclusions of Law in duplicate (these have not been included as the Court did not require

them).

      (3)    Trial of this case is expected to take two or three days.

      (4)    Indicate the type of trial by placing an X in the appropriate box  [X] Non-jury

(5)    No jurors will be selected at the commencement of the trial.

(6)    The parties agree that the issues of liability and damages should not be bifurcated for

trial.

(7)    The parties do not consent to this case being reassigned to a magistrate judge for trial.

(8)    This Order will control the course of the trial and may not be amended except by consent

of the parties and the court, or by order of the court to prevent manifest injustice.

(9)    Possibility of settlement of this case was considered by the parties.

Date:_ June 22, 2009_____

_____
United States District Judge

_____
Attorney for Plaintiff

_____
Attorney for Defendant

4

**STATEMENT A**

## PARTIES' JOINT STATEMENT OF UNCONTESTED FACTS

1.      Local 1 of the Hotel Employees and Restaurant Employees International Union ("HEREIU"), now known as "UNITE HERE" is in a labor dispute with the Congress Plaza Hotel & Convention Center ("Congress Plaza Hotel") governed by the National Labor Relations Act, as amended, 29 USC §151, et seq. ("NLRA"), and since June 2003, Local 1 Congress Plaza Hotel employees have been striking in front of the Congress Plaza Hotel facilities.

2.      The Congress Plaza Hotel is a limited partnership with its headquarters and principal place of business in Chicago, Illinois where it is engaged, inter alia, in the hotel business at 520 South Michigan Avenue, Chicago, Illinois.

3.      The Congress Plaza Hotel is an employer in an industry affecting commerce within the meaning of the NLRA.

4.      At all times material hereto, the Congress Plaza Hotel has recognized UNITE HERE and its affiliated Local Union Number 1 as the exclusive collective bargaining representative for approximately 130 of its employees at its facilities located in Cook County, Illinois.

5.      The Congress Plaza Hotel's current collective bargaining agreement with UNITE HERE, Local 1 expired by its terms on December 21, 2002.

6.      Since shortly prior to the expiration of the term of the current collective bargaining agreement, Congress Plaza Hotel has undergone negotiations with UNITE HERE, Local 1 for a new collective bargaining agreement covering, inter alia, the hotel's employees and despite its best efforts, a work stoppage has ensued during these negotiations.

7.      Prior to the institution of this action, the Congress Plaza Hotel had contracted to prepare plans and drawings as part of a planned improvement design to its Chicago hotel that included a planned four story addition, rooftop addition, rooftop addition that included a pool, health club and restaurant.

8.      During 2006 and until or about May 18, 2007, the Alderman of the Second Ward of the City of Chicago was Madeleine L. Haithcock.

9.      Under the Municipal Code of the City of Chicago, 10-28-820, permit applications that comply with the requirements of the City Code and Regulations regarding cafes are directed by the City's Department of Consumer Protection and Licensing (formerly Business Affairs and Licensing) to the alderman of the affected ward along with a recommendation for introducing an ordinance approving the application. Section 10-28-820 states that the alderman's approval shall not be unreasonably withheld.

**STATEMENT A**

2006 Sidewalk Café Application

10.     The sidewalk café permit issued to Plaintiff on July 27, 2006, stated that it was "revocable by the Director of Business Affairs and Licensing at any time."

11.     Sometime after the issuance of the July 27, 2006 sidewalk café permit, the Congress Plaza Hotel purchased tables, chairs and other equipment needed to operate an outdoor café and commenced operating a sidewalk café on the public sidewalk outside the Congress Plaza Hotel at 520 South Michigan Avenue, Chicago, Illinois.

12.     At its meeting on October 3, 2006, the Committee on Transportation and Public Way voted Do Not Pass on the proposed ordinance to issue to the Congress Plaza Hotel a sidewalk café permit.

13.     Madeleine Haithcock, then Alderman of the Second Ward, initially supported Plaintiff's 2006 Sidewalk Café application, and introduced the ordinance that, if enacted, would have granted the permit.  At the October 3, 2006, meeting of the Committee on Transportation and the Public Way, the Committee members were informed by the Chair that Alderman Haithcock did not support the ordinance.

Rooftop Renovation Application and Litigation

14.     On May 2, 2007, then Alderman Haithcock issued a letter to the Department of Planning and Development, Landmarks Division, indicating that she had reviewed the plans for the planned improvements referenced above and that she had no objections to the necessary Landmark and DCAP permits required for the hotel's planned improvements. At the time, DCAP stood for the Department Construction and Permits; due to departmental reorganization, construction permits under the Building Code are now sought from the Buildings Department.

15.     On or about July 9, 2007, a meeting took place between Alderman Fioretti and representatives of the Congress Plaza Hotel at Alderman Fioretti's office.

16. On November 21, 2007, Plaintiff submitted an application (application number 537) to the Chicago Plan Commission proposing construction of a five-storey addition to the existing hotel.  The addition consists of four stories of add additional rooms, and a rooftop swimming pool, restaurant, and health club ("Rooftop Renovations").

17.     Plaintiff's Rooftop Renovations application was approved by the City's Landmarks Commission at its December 6, 2007, meeting and that Commission's approval letter was issued on December 10, 2007.

18. At the January 17, 2008 Plan Commission meeting, a public hearing was held on

**STATEMENT A**

Plaintiff's application under the Chicago Lake Michigan and Chicago Lakefront Protection Ordinance ("Lakefront Ordinance"). The City's Department of Planning and Development supported the application and stated that in its view the application satisfied the criteria and objectives set forth in the Lakefront Ordinance. The Plan Commission voted on the application. Four commissioners voted in favor; one commissioner voted against; and four commissioners abstained. The result of the vote is that the application was denied.

19.     At the public hearing on Plaintiff's Rooftop Improvements application held during the January 17, 2009 Plan Commission meeting, Alderman Robert Fioretti spoke against approval.

20.     On February 13, 2008, the Plan Commission approved a resolution stating that Plaintiff's application did not meet Policy Number 4 of the Lakefront Ordinance.

21. On March 19, 2008, Plaintiff filed a Verified Complaint for Administrative Review and Petition for Writ of Certiorari in the Circuit Court of Cook County, Chancery Division, challenging the Plan Commission's denial of the application. The matter was assigned to Judge Sophia Hall. Count I of the Complaint was an Administrative Review claim. Count II of the Complaint was a Petition for Common-Law Writ of Certiorari.

22.     On May 8, 2009, the Circuit Court of Cook County granted the Congress Plaza Hotel's Petition for Writ of Certiorari and entered an order reversing the City of Chicago's Planning Commission's denial of Plaintiff's application for the Rooftop Improvements as against the manifest weight of the evidence.

23.     The May 8, 2009 order was clarified by the Circuit Court's Order of June 11, 2009, granting Plaintiff's Petition for Writ of Certiorari, vacating the decision of the Plan Commission as against the manifest weight of the evidence, and remanding the matter to the Plan Commission.

24.     At the public hearing on Plaintiff's Rooftop Improvements application held during the June 18, 2009 Plan Commission meeting, Alderman Robert Fioretti spoke against approval.

2009 Sidewalk Café Application

24. At the May 13, 2009 meeting of the City Council, a proposed ordinance, PO 2009-4122, was introduced which, if enacted, would grant Plaintiff a permit to operate a sidewalk café for the 2009 café season. Upon introduction, PO 2009-4122 was referred to the Council's Committee on Transportation and Public Way.

25. At the June 1, 2009 meeting of the Committee on Transportation and Public Way,

3

STATEMENT A

proposed ordinance PO 2009-4122 was deferred; that is, no vote on it was taken at Committee, and it was not reported back to the City Council at the Council's next meeting, which occurred on June 3, 2009. PO 2009-4122 was not voted on or enacted at that City Council meeting.

26. The handwritten comments of Deferred and P (for Pass) on the agenda for the June 1, 2009 meeting of the Committee on Transportation and Public Way were made by Committee staff.

Other Second Ward 2009 Sidewalk Café Ordinances Introduced on May 13, 2009

27. At the May 13, 2009, meeting of the City Council, in addition to PO 2009-4122 being introduced, nine other proposed ordinances were introduced that, if enacted, would grant the following businesses in the Second Ward permission to operate sidewalk cafés for the 2009 café season:

Amarit Restaurant, 600 South Dearborn Street
East Coast Pantry, 611 South Wells Street
Edwardo's Natural Pizza Restaurant, 600 West Jackson Blvd
Eleven City Diner, 1112 South Wabash Avenue
Gioco, 1312-14 South Wabash Avenue
Opera, 1301 South Wabash Avenue
Oysy, 888 South Michigan Avenue
The Beer Bistro, 1061 West Madison Street
Trattoria Caterina, 616 South Dearborn Street

28.    Other than Plaintiff's ordinance, PO 2009-4122, the nine proposed sidewalk café ordinances listed in paragraph 27 were the only Second Ward sidewalk café ordinances introduced at the May 13, 2009 City Council meeting. They were all introduced by Alderman Fioretti, and Alderman Fioretti signed the applications submitted by each of these nine businesses.

29. The above nine ordinances were voted Do Pass at the June 1, 2009, Committee meeting, the same meeting at which PO 2009-4122 was deferred.

Possible Uncontested fact 30: The above nine ordinances were enacted at the City Council meeting on June 3, 2009. *[Subject to verification when the official record of that meeting, the Journal of Proceedings of the City Council, is published in late June]*

31.    With regard to Plaintiff's 11 public way permit applications shown in Defendants' Trial Exhibit 1, counsel, these permit applications were routed through Defendants' counsel for processing, by mutual agreement of the respective Parties' counsel.

Statement C (1) and (2)

## Plaintiff's Trial Exhibits and Defendant's Objections

| Plaintiff's Exhibit No. | Description | Stamp Numbers or Other Detail | City's Objections |
|---|---|---|---|
| 1 | Anthony Adkins July 16, 2000 letter (faxed on July 17, 2007) to Nahmias reporting work exceeding contract and partial invoice for $12,500 | CONG 417-418?? (doesn't include fax headers that are on 417-418) | Relevance; Hearsay |
| 2 | May 21, 2004 Nahimas Letter | ? | Relevance; Hearsay |
| 3 | June 14, 2004 Nahmias letter | ? | Relevance; Hearsay |
| 4 | July 1, 2004 Cook County Order | | None |
| 5 | Anthony Adkins February 10, 2006 letter to Nahmias invoicing $12,500 for work requested by Landmarks; two $5,000 check copies attached | CONG 406-409 | Relevance; Hearsay |
| 6 | Landmarks April 18, 2006 permit correction instructions | | Relevance |
| 7 | April 26, 2006 Adkins hotel picture to Landmarks | | Relevance, cumulative |
| 8 | May 2, 2007 Haithcock approval letter of rooftop application | C00530 | No objection |
| 9 | May 8, 2006 Cynthia T. Facsimile and comments on rooftop plans | C00533-534 | No objection |
| 10 | May 1, 2007 Adkins letter requesting approval | C00531 | Hearsay |
| 11 | June 6, 2006 Chicago Loop Alliance comments letter | C00532 | Hearsay |
| 12 | July 21, 2006 Local 1 objections to Congress sidewalk café | C00919-921 | Hearsay |

| 13 | July 24, 2006 Haithcock letter withdrawing approval of Congress sidewalk café | C00918 | No objection |
|----|----|----|----|
| 14 | July 27, 2006 Congress sidewalk café permit | | No objection |
| 15 | August 28, 2006 Chicago notice of deferring sidewalk café permit | | No objection |
| 16 | September 1, 2006 Graham letter to Haithcock regarding 2006 café permit | | Hearsay; non-hearsay facts are cumulative |
| 17 | September 6, 2006 Chicago code order and findings | | No objection |
| 18 | September 6, 2006 Graham letter to Haithcock regarding 2006 café permit | | Multiple levels of hearsay |
| 19 | September 7, 2006 Graham letter to Haithcock regarding 2006 café permit | | Multiple levels of hearsay |
| 20 | September 7, 2006 Graham letter to Bruner regarding 2006 café permit | | Multiple levels of hearsay |
| 21 | September 7, 2006 Graham letter to Haithcock regarding 2006 café permit | | Multiple levels of hearsay |
| 22 | September 8, 2006 Graham letter to Haithcock regarding 2006 café permit | | Multiple levels of hearsay |
| 23 | September 12, 2006 Nahmias letter to Haithcock | | Hearsay |
| 24 | September 18, 2006 Graham letter to City officials regarding 2006 café permit | | Multiple levels of hearsay |
| 25 | September 18, 2006 Graham letter to City | | Multiple levels of hearsay |

2

| 26 | September 19, 2006 Allen letter directing café permit issuance | | No objection |
|---|---|---|---|
| 27 | September 28, 2007 Congress Hotel outdoor café seating diagram showing 104 seats | CONG 60 | Hearsay; Relevance |
| 28 | September 2006 email discussions re rooftop | C00653 | No objection |
| 29 | October 17, 2006 Graham letter to Calicio/Mariane Re refund | | Hearsay |
| 30 | January 22, 2007 Graham letter to Calicio/Mariane re refund | | Hearsay |
| 31 | January 23, 2007 Borovilos letter to Graham re refund | | No objection |
| 32 | May 1, 2007 Adkins letter to Haithcock re approval rooftop | C00494 | Hearsay, relevance |
| 33 | May 2, 2007 Haithcock letter to City approving rooftop | | Relevance |
| 34 | May 3, 2007 McKenna/Tabing email re rooftop | | Hearsay |
| 35 | May 8, 2006 Haithcock letter to City approving rooftop | CONG 00321 | Signature; Relevance |
| 36 | May 2007 Planning attendance list | | Relevance; Hearsay |
| 37 | May 2007 Tabing/Bush emails Re rooftop | C00566 | Relevance; hearsay |
| 38 | May 2007 Tabing/Bush/Roubik/McKenna emails Re rooftop | C00523 | Relevance; hearsay |
| 39 | May 2007 Tabing/Bush/Roubik/McKenna emails Re rooftop | C00581 | Relevance; hearsay |

3

| 40 | May 8, 2007 Roubik to Congress email Re rooftop | C00527 | Relevance |
| 41 | May 2007 Tabing/Roubik/McKenna emails Re rooftop | C00511 | Relevance; hearsay |
| 42 | May 2007 Tabing/Bush/Roubik/McKenna emails Re rooftop | C00510, 514, 516, 519-26 | Relevance; hearsay |
| 43 | June 6, 2006 Loop Alliance letter to Congress | CONG 00323 | Cumulative; Relevance; hearsay |
| 44 | June 2007 Tabing/Bush/Roubik/McKenna emails Re rooftop and strike | | Relevance; hearsay |
| 45 | June 18, 2007 Adkins letter re Fioretti meeting | | Hearsay |
| 46 | July 6, 2007 Illinois Home Inspection letter | | Relevance, hearsay |
| 47 | July 6. 2007 memo to Nahmias Re inspection | | Foundation, hearsay, relevance |
| 48 | Karabis email Re July 2007 meeting | C00157 | No objection |
| 49 | May 2007 Roubik email to Congress Re contacting alderman | CONG 00068 | Relevance |
| 50 | July 12, 2007 Goeken email Re Congress rooftop | C00564 | Relevance, hearsay |
| 51 | July 18, 2007 Andjelkovich letter to Tabing | CONG 00038 | Relevance; hearsay |
| 52 | July 25, 2007 Roubik email to Hoffman Re rooftop | C00608 | Relevance |
| 53 | August 1, 2007 Andjelkovich letter to Fioretti | CONG 00046 | Multiple levels of hearsay |

4

| 54 | August 6, 2007 Gartell memo Re Hernandez inspection | CONG 00012 | Relevance, hearsay |
|---|---|---|---|
| 55 | August 6, 2007 Hernandez citation | CONG 00010 | Relevance |
| 56 | August 7, 2007 Kind memo Re 8/6 inspection | CONG 00011 | Relevance, hearsay |
| 57 | August 7, 2007 Florence memo Re 8/6 inspection | CONG 00008 | Relevance, hearsay |
| 58 | October 5, 2004 Chicago code order and findings | C000228-229 | No objection |
| 59 | April 6, 2004 Chicago code order and findings | C000230-231 | No objection |
| 60(a) | September 6, 2006 Chicago code order and findings | C00226-227 | No objection |
| 60(b) | April 9, 2007 Chicago code order and findings | C00225- | No objection |
| 61 | June 27, 2007 Chicago code order and findings | | No objection |
| 62 | August 29, 2007 Rowe letter to Adkins | C00727 | Relevance, hearsay |
| 63 | October 5, 2007 Boudreau email to Roubik | C00504 | Relevance, hearsay |
| 64 | October 10, 2007 Boudreau/Doering emails | | Relevance, hearsay |
| 65 | October 11, 2007 Blair/Roubik email | C00688-699 | Relevance |
| 66 | Adkins October 15, 2007 invoice to Nahmias for $993, with $993 check attached | CONG 410-411 (also CONG 230) | Relevance |
| 67(a) | Blair Drawings submission | C00678-687 | Relevance |
| 67(b) | Adkins October 23, 2007 invoice to Nahmias for $2,560.75, with check for $2,560.75 attached | CONG 414-415 | Relevance; hearsay |

| | | | |
|---|---|---|---|
| 68 | 2007 letter and vault permit application | | Letter is hearsay; encl.cumulative with City's uncontested facts. |
| 69 | November 1, 2007 Andjelkovich letter | | Hearsay |
| 70 | November 2007 café application | C or CONG __? | Foundation, relevance; hearsay |
| 71 | Anthony Adkins December 5, 2007 invoice to Congress for $1,000 and payment check of same amount | CONG 420-421 | Relevance; hearsay |
| 72 | December 2007 café application | C or CONG __? | Hearsay |
| 73 | December 6, 2007 Public Meeting Agenda | | Relevance |
| 74 | December 10, 2007 Planning approval letter | | No objection |
| 75 | December 18, 2007 Adkins letter to Andjelkovich | | Hearsay, foundation. |
| 76 | Adkins January 6, 2008 letter and invoice to Nahmias for $6,720 and payment check of $6,000. | CONG 422-424 | Relevance; hearsay |
| 77 | January 10, 2008 Boudreau email | CPH001572; C00816-817 | No objection to email. Object to relevance of 816-17; hearsay as to 816-17 |
| 78 | Adkins January 15, 2008 invoice to Nahmias for $136.08 and payment check of same amount | C or CONG __? | Relevance; hearsay |
| 79 | January 16, 2008 Loop Alliance letter to Nahmias | | No objection |

| 80 | January 16, 2008 Fioretti letter to Randall | Partial duplicate of 77. | Relevance; hearsay |
| 81 | January 17, 2008 Andjelkovich letter Nitzberg | CONG00325-26 | Hearsay; relevance |
| 82 | Plan Commission Legal Notice | | Relevance |
| 83 | January 17, 2008 Plan Commission transcript | | Relevance; hearsay |
| 84 | Plan Commission Resolution | | Relevance |
| 85 | February 20, 2008 Stone letter | | Relevance; hearsay |
| 86 | Local 1 July 9, 2008 announcement | | Hearsay, relevance |
| 87 | 2009 café application | | No objection |
| 88 | May 8, 2009 Judge Hall Transcript | | Relevance |
| 89 | May 8, 2009 Citron letter Re court order | | No objection; hearsay |
| 90 | 520 Corp docs | CPH 00750-764 | Object to illegible portions; hearsay |
| 91 | June 28, 2006 Grants of Privileges | CPH00229-00251; CPH00353 | Relevance; cumulative to uncontested facts |
| 92 | Plan Commission Rules | | Relevance |
| 93 | Lakefront Ordinance | | Relevance, cumulative to uncontested facts |
| 94 | Landmark Designation | | No objection |
| 95 | Municipal Code Excerpts | | No objection |
| 96 | Complaint | | Already in the record; not evidence |

7

| 97 | Amended Complaint | | Already in the record; not evidence |
|---|---|---|---|
| 98 | City's Answer and Affirmative Defenses | | Already in the record |
| 99 | Plaintiff's Interrogatory Answers | | Hearsay, if offered instead of testimony |
| 100 | February 22, 2008 Supplemental discovery response - Plaintiff's | Letter from P. Andjelkovich to K. Dorff | Relevance. |
| 101 | February 28, 2008 Plaintiffs' Supplemental Discovery Requests | Letter from P. Andjelkovich to K. Dorff | Relevance. |
| 102 | Plaintiff's Responses to Request to Produce | | Relevance. |
| 103 | Plaintiff's Rule 26 Disclosures. | | No objection to use in motions or other pre-trial matters. Not evidence. |
| 104 | Supplemental Plaintiff's Rule 26 Disclosures | | No objection to use in motions or other pre-trial matters. Not evidence; hearsay |
| 105 | Plaintiff's Rule 26(a)(2) Disclosures | | See City motion in limine to bar this witness; hearsay |
| 106 | Plaintiff's Rule 26(a)(2) Disclosures | Expert witness disclosures for B. Citron. | See City motion in limine to bar this witness; hearsay |

| 107 | Defendant's Rule 26 Disclosures | 10/12/07 | Relevance. |
|-----|--------------------------------|----------|------------|
| 108 | Defendant's Amended Interrogatory Responses | 1/22/08. | Relevance. |
| 109 | Defendant's Interrogatory Responses | | Relevance. |
| 110 | Defendants' Amended Interrogatory response | | Same document as 108. |
| 111 | Defendants' Verifications | | Relevance. |
| 112 | December 26, 2007 Defendants' Amended Interrogatories and Stipulation letters | | Relevance. The uncontested facts in the PTO supercede this correspondence. |
| 113 | December 31, 2007 Defendants' Privilege log and Supplemental Interrogatory Response | 12/31/07 discovery letters from City's counsel. | Relevance. |
| 114 | January 7, 2008 Defendants Supplemental Interrogatory Responses | | Relevance. |
| 115 | April 21, 2008 Defendants Supplemental Interrogatory Responses | | Relevance. |
| 116 | June 2, 2008 Defendants Supplemental Interrogatory Responses | Letter from K. Dorff to P. Andjelovich about discovery disputes/motion to compel. | Relevance. |
| 117 | June 27, 2008 Defendants Supplemental Interrogatory Responses and Robert Fioretti Affidavit | | No objection to use of affidavit. Hearsay |

| 118 | July 11, 2008 Defendants Supplemental Interrogatory Responses | | Relevance. Also, Hearsay as to the attached letter from P. Andjelkovich. |
|---|---|---|---|
| 119 | Defendants' Responses to Request to Produce | | Relevance. |
| 120 | February 11, 2008 Jacoby letter | | Relevance. |
| 121 | Jubeh Affidavit | | Relevance. |
| 122 | February 20, 2008 letter from P. Andjelkovich to K. Dorff | 2/15/08 Tamarin letter attached. | Relevance, cumulative as the recoding referenced is available. |
| 123 | Tamarin Affidavit | | No objections. |
| 124 | November 27, 2007 Discovery Letter | from K. Dorff | Relevance. |
| 125 | Photocopies of Café Photographs | CONG 361-372 | Foundation needed as to what period of time is depicted, locations; hearsay. |
| 126 | Newspaper Article | | Hearsay; Relevance; Foundation |
| 127 | Newspaper Article | | Hearsay; Relevance; Foundation |
| 128 | Newspaper Article | | Hearsay; Foundation |
| 129 | Newspaper Article | | Hearsay; Foundation |

| 130 | Newspaper Article | | Hearsay; Foundation |
|-----|-------------------|---|---------------------|
| 131 | Plan Commission Application | | Hearsay; Relevance |
| 132 | Application Pictures | | Hearsay; Foundation |
| 133 | January 17, 2008 Department of Planning and Development Report Plan Commission | | Hearsay; Relevance |
| 134 | Citron Documents | | Hearsay; Relevance; Foundation; Completeness |
| 135 | May 2007 Planning Attendance Sheet | | Relevance; hearsay |
| 136 | Rooftop Submission | | Hearsay; completeness |
| 137 | Site Evaluation Report | | Hearsay; completeness |
| 138 | Site Evaluation Report | | Hearsay; completeness |
| 139 | Load Calculation | CONG 00028 | Hearsay; completeness |
| 140 | No Exhibit | | |
| 141 | Photographs of various sidewalk cafes | | Hearsay; foundation; relevance |
| 142 | 433 F. 2d 961 | | Cases are law, not evidence. |
| 143 | Damages Report Summary and worksheets for sidewalk café and rooftop, prepared by Steurebaut | CONG 602-607 | Hearsay; Speculative; Foundation; Relevance |

| 144(a) | Consolidated Food and Beverage Department Financial Statements | CONG 381-386 | Relevance; hearsay; foundation |
| 144(b) | 2006 Café Permit | CONG 387 | No objection. |
| 144(c) | Lunch Menu | CONG 388-390 | Hearsay; Relevance |
| 144(d) | Steakhouse Menu | CONG 391-392 | Hearsay; Relevance |
| 145 | Congress Checks to Adkins, Andjelkovich, Funkhouser, patio furntiure; and misc. invoices | CONG 397-460 | Relevance; Foundation; hearsay |
| 146 | Lounge/appetizer Menu | CONG 482 | Hearsay; Relevance |
| 147(a) | Separate financial statements for Food operations and Beverage operations; wage tables | CONG 472-480 | Relevance; Hearsay; foundation |
| 147(b) | Email listing patio silverware needed per table; wage table; seating plan; headcounts at competitor cafes | CONG 483-486 | Hearsay; Relevance; Speculative; Foundation |
| 148 | Various invoices from Adkins to Hotel; documents produced by Citron in connection with expert report | CONG 228-247 | Hearsay as to some of the Adkins letters and the Citron documents; Relevance (as to many of the Adkins documents; City is moving in limine to bar Citron testimony and report) |

| 149 | Duplicate of all of Exs. 146 and 147(b), plus an additional seating chart | CONG 462; 482-486 | Objections to 146 and 147(b) hereby incorporated; hearsay as to additional seating chart |
|---|---|---|---|
| 150 | No Exhibit | | |
| 151 | Damages Report Summary and worksheets for sidewalk café and rooftop; duplicate of Ex. 147(a) | CONG 466-480 | Objections to 147(a) hereby incorporated; Hearsay; Speculative; Foundation; Relevance |
| 152 | Damages Report Summary sheet with Steurebaut's handwritten notes and changes to total figure | (produced at deposition; never stamped) | Hearsay; Speculative; Foundation; Relevance |
| 153 | Damages Report Summary and worksheets for sidewalk café and rooftop with Steurebaut's handwritten notes | (produced at deposition; never stamped) | Hearsay; Speculative; Foundation; Relevance |
| 154 | Adkins Records | Partial duplicates | Hearsay, foundation |
| 155 | Adkins Produced Documents (includes a September 22, 2005 proposal to Hotel for $2,500 for rooftop drawings; Feb. 10, 2006 proposal for rooftop drawings; November 2, 2005 proposal from Builders Development and Associates to Adkins for structural site evaluation; November 9, 2005 proposal from DC Consulting for structural study) | ARIEL 1-40 | Relevance; hearsay; foundation |

13

| 156 (1 - 10) | Fioretti Exhibits 1 - 10 | | Plaintiff gave the City its trial exhibits for the first time on Friday, June 12, and demanded that the City list its objections by Monday, June 15. The City objects to Plaintiff dumping every deposition exhibit (total 65) into groups of purported trial exhibits. | Numerous objections to various documents, including, but not limited to: documents related to settlement discussions; hearsay; foundation; cumulative; deposition exhibits are not automatically admitted at trial. |
|---|---|---|---|---|
| 157 (1 - 9) | Jubeh Exhibits 1 - 9 | | | Same notes and objections as 156. |
| 158 (1 - 13) | Tamarin Exhibits 1 - 13 | | | Same notes and objections as 156. |
| 159 (1 - 6) | Tabing Exhibits 1 - 6 | | | Same notes and objections as 156. |
| 160 (1 - 13) | Nahmias Exhibits 1 - 13 | | | Same notes and objections as 156. |
| 161 ( 1 - 14) | Haithcock Exhibits 1 -14 | | | Same notes and objections as 156. |
| 162 | October 3, 2006 Transportation Committee Agenda | C01011-12 | | No objection. |
| 163 | June 1, 2009 Transportation Committee Agenda | C01006-07; C01013-1020 | | Object to C01013-20 - relevance. |

| 164 | 2006 Transportation Committee Tape Recording | | No objection. |
|---|---|---|---|
| 165 | 2009 Transportation Committee Tape Recording | | No objection. |
| 166 | 2008 Fioretti Video Tape | | Relevance |
| 167 | 2007 Fioretti Video Tape | | No objection. |
| 168 | No Exhibit | | |
| 169 | Graham Affidavit | | Hearsay |
| 170 | City Council Journal of Proceedings | C01021-26 | No objection |
| 171 | Proposed Ordinance (1087406) | C01027 | No objection |
| 172 | Other 2009 Sidewalk Café Applications | Second Ward C01029-57 | No objection; hearsay |
| 173 | June 8, 2009 Dorff Letter | | Cumulative to City's uncontested facts |
| 174 | June 9, 2009 Dorff Letter | | Relevance |
| 175 | June 9, 2009 Andjelkovich Letter | | Relevance |
| 176 | June 11, 2009 Dorff Letter | | Relevance |
| 177 | Video recording of June 15, 2009 | Pending receipt form union | Pending |
| 178 | 6/18/09 Plan Commission hearing transcript and resolution | Pending from City | Pending |
| 179 | Circuit Court of Cook Count Order of 6/11/09 in 08 CH 10397 (Hall, J.) | | No objection. |
| 180 | Tamarin Affidvait re: 6/15/09 DVD | | Pending |
| 181 | Reynolds Letter re: 6/15/09 DVD | | Pending |
| 182 | Adkins IDPR | | Pending |

Statement C

## DEFENDANTS' TRIAL EXHIBITS AND PLAINTIFF'S OBJECTIONS

| Exhibit No. | Description | Bates Numbers | Objections |
|---|---|---|---|
| 1 | Ordinances, and associated permits and applications, granting Plaintiff various public way permits | C 1058-1151 | Relevance, Materiality, Foundation, FRE 402 & 403 |
| 2 | April 22, 2009 correspondence from Andjelkovich to Dorff and attached documents | | Relevance, Materiality, FRE 402 & 403 |
| 3 | April 23, 2009 correspondence from Andjelkovich to Dorff and attached documents | | Relevance, Materiality, FRE 402 & 403 |
| 4 | May 4, 2009 correspondence from Andjelkovich to Dorff and attached documents | | Relevance, Materiality, FRE 402 & 403 |
| 5 | May 6, 2009 correspondence from Andjelkovich to Dorff and attached documents | | Relevance, Materiality, FRE 402 & 403 |
| 6 | June 5, 2009 correspondence from Andjelkovich to Dorff and attached documents | | Relevance, Materiality, FRE 402 & 403 |
| 7 | April 10, 2006 Structural Site Evaluation of Congress Hotel | C 178-188 | No objection. |
| 8 | Congress Hotel Reservation Contracts | CONG 489-601 | Relevance, Materiality. |
| 9 | Transcript of June 18, 2009 Plan Commission consideration of Plaintff's application on remand | Pending | |
| 10 | Plan Commission Resolution re : Plaintiff's application | Pending | |

In addition to the foregoing, Defendants reserve the right to introduce all or part of the following Plaintiff's exhibits, to the extent Plaintiff does not introduce them, and for purposes other than those to which the City does not object:

13, 14, 15, 26, 83, 133, 144(a), 147(a), 151, 152, 153, 162, 163, 170, 171

**Statement C**

In addition, as Defendants did not receive until June 12 Plaintiff's exhibit list or its 174 exhibits (many of which contained numerous pages, including group exhibits containing 65 deposition exhibits), Defendants reserve the right to supplement their list of exhibits as promptly as possible given Plaintiff's failure to provide these exhibits until one business day before June 15, with a pre-trial order due June 22.

**Statement (d)(1)**

**A.    WITNESSES TO BE CALLED AT TRIAL BY PLAINTIFF**:

1.    Anthony "Ariel" Adkins
      One South Dearborn Street
      Suite 2100
      Chicago, IL 60603

2.    Alderman Robert Fioretti
      30 North LaSalle Street
      Suite 1230
      Chicago, IL 60602

3.    Daniel T. Graham
      55 West Monroe Street
      Suite 2300
      Chicago, IL 60603

4.    Madeline L. Haithcock
      2639 South Michigan Avenue
      Unit B
      Chicago, IL 60616

5.    Hanah Jubeh
      4317 W. 81st Street
      Chicago, IL 60652

6.    Ty Tabing
      4145 North Sheridan Road, #2E
      Chicago, IL 60613

7.    Bernard L. Stone
      6199 North Lincoln Avenue
      Chicago, IL 60659

8.    Henry Tamarin
      55 West Van Buren
      Chicago, IL 60605

9.    Bernard Citron
      222 N. LaSalle Street
      Suite 1910
      Chicago, IL  60601-1102

10.     Shlomo Nahmias
        520 S. Michigan Ave.
        Chicago, IL 60605

11.     Mr. Jim Stuerbaut
        520 S. Michigan Ave.
        Chicago, IL 60605

12.     Shaqueel Saddiqui
        520 S. Michigan Ave.
        Chicago, IL 60605

## B.    WITNESSES THAT MAY BE CALLED AT TRIAL BY PLAINTIFF:

13.     Patricia Scudiero
        Commissioner Zoning Land Use Planning Department
        City Hall
        Room 905
        121 North LaSalle Street
        Chicago, Illinois 60602

Plaintiff reserves the right to call additional rebuttal.

2

**STATEMENT D**

## Defendants' Preliminary Objections to Plaintiff's Trial Witnesses

In general, Defendants note that Plaintiff has listed 12 witnesses in a case where very few facts are disputed. Defendants reserve the right to make all objections to specific testimony, based on rulings and other developments at trial, especially if Plaintiff's evidence is cumulative, but notes the following likely objections:

**Anthony "Ariel" Adkins** -- Defendants will object to any testimony which is hearsay.

**Alderman Robert Fioretti** – Defendants will object to any out-of-court statements of Alderman Fioretti being admitted as admissions of a party opponent, as he is not named personally in this matter, if such statements do not otherwise qualify under FRE 803.

**Daniel T. Graham** – Mr. Graham, attorney for Plaintiff, was not deposed in this case, and Plaintiffs have not disclosed what testimony they intend to seek from him. Defendants have filed a motion in limine to bar Mr. Graham from testifying at the trial, but reserves its objections if Mr. Graham is permitted to testify.

**Madeline Haithcock** -- Defendants will object to any out-of-court statements of Alderman Haithcock as hearsay if such statements do not qualify under FRE 803.

**Hannah Jubeh** – Defendants will object to any attempt to use Ms. Jubeh's statements as City admissions based on the limited scope of her former employment by the City, which had no bearing on the issues in this case.

**Ty Tabing** – Defendants will object to any attempt to elicit form Mr. Tabing, the head of a trade association, any evidence as to City policies at issue in this case.

**Henry Tamarin** – Defendants will object to any testimony which is hearsay.

**Shlomo Nahmias** – Defendants will object to any testimony that is speculative, and to

STATEMENT D

any testimony about damages as to which the City was prevented from effectively deposing the witness due to the assertion of attorney-client privilege as to damages calculations done at the direction of, or with the involvement of, Mr Andjelkovich, counsel for Plaintiff.

**Jim Steurbaut** – Defendants will object to any testimony that is speculative, and to any testimony about damages as to which Defendants were prevented from effectively deposing the witness due to the assertion of attorney-client privilege as to damages calculations done at the direction of, or with the involvement of, Mr Andjelkovich, counsel for Plaintiff.

**Shaqueel Saddiqui** – Defendants will object to any testimony that is speculative, and to any testimony about damages as to which Defendants were prevented from effectively deposing the witness due to the assertion of attorney-client privilege as to damages calculations done at the direction of, or with the involvement of, Mr. Andjelkovich, counsel for Plaintiff.

**Bernard I. Citron** -- Citron was disclosed only as an expert witness. After taking his deposition, the City notified Plaintiff by letter dated April 28, 2008 that the City would move to bar Citron from so testifying, on *Daubert* and other grounds. Almost a year later, by letter of April 9, 2009, the City again asked if Citron would be called as an expert, and Plaintiff said he would. Accordingly, Defendants has filed a motion *in limine* to bar Mr. Citron from testifying at the trial, but reserves its objections if Mr. Citron is permitted to testify.

At no time did Plaintiff list Mr. Citron as fact witness, not even in response to the above letters, until June 16, 2009, when they added him to their witness list in the draft Pre-Trial Order. The City objects to his testifying as a fact witness at all, whether as to lay opinion, or any contacts he had, as Plaintiff's counsel, with represented City personnel relating to this case.

2

**STATEMENT D**

**Patricia Scudiero** – Defendants object to the calling of this busy City Commissioner, as her statements at the June 18, 2009 Plan Commission meeting are irrelevant to the issues for trial. Moreover, her remarks will be provided in the transcript from that proceeding, which is being prepared and will shortly be a matter of public record.

**STATEMENT D**

**Defendant's Trial Witness List, With Plaintff's Objections**

1.      Defendant will call the following witnesses to testify at trial:  Subject to Paragraphs 2 and 3, Defendant does not intend to call witnesses in its case-in-chief who are not already listed as witnesses Plaintiff will or may call, but will obtain testimony via cross-examination of Plaintiff's witnesses at the time when they are called by Plaintiff.

2      Defendant may call the following witness to testify at trial: the following witnesses listed by Plaintiff in this Final Pre-Trial Order, in the event that Plaintiff does not call that witness:

Shlomo Nahmias                          Anthony "Ariel"Adkins
President, Congress Hotel               One South Dearborn Street
                                        Suite 2100
Shakeel Sidiqqui                        Chicago, IL 60603
General Manager, Congress Hotel

James Steuerbaut                        Bernard Stone
Controller, Congress Hotel              Alderman of the 50th Ward
                                        City of Chicago
Madeline Haithcock                      City Hall 200
2639 S. Michigan Avenue                 Chicago, IL 60602
Chicago, IL 60616

Defendant reserves the right to call the following witnesses to authenticate exhibits that Defendant may offer in evidence:      Norma Reyes
                                        Commissioner
                                        Department of Business Affairs and Consumer Protection
                                        City Of Chicago, Daley Center, Chicago IL

3.      Defendant further reserves the right to call rebuttal witnesses, and witnesses in response to any testimony admitted in Plaintiff's case that is outside the scope of this Pretrial Order.

**PLAINTIFF'S OBJECTIONS TO DEFENDANTS' WITNESSES**

Plaintiff objects to Defendants' offering of the testimony of Bernard Stone for any subject beyond what is set forth in his letter dated February 20, 2008 (Plaintiff Trial Exhibit 85). Defendants, despite Plaintiff's interrogatory requesting the identity of persons with knowledge and the basis of their knowledge, failed to identify Mr. Stone as a person having knowledge or the basis of his knowledge relating to the claims and defenses in this matter.

At this time Plaintiff does not object to the calling of the Defendants' other witnesses, but reserves the right to object to the admissibility of testimony or evidence presented through these witnesses should objections during questioning develop.

**STATEMENT G**

## PLAINTIFF'S ITEMIZED STATEMENT OF DAMAGES

| | | |
|---|---|---|
| Architectural Expenses | | $38,153.75 |
| Legal Expenses | | 192,697.29 |
| Purchase patio furniture(2/07) | | 1,376.75 |
| Purchase patio furniture(8/06) | | 3,630.63 |
| | | |
| Profit/Loss Damages: | | |
| Outdoor café profit- 2006 | 23,849.57 | |
| Outdoor café profit- 2007 | 27,969.27 | |
| Outdoor café profit- 2008 | 28,147.88 | |
| Outdoor café profit- 2009 | 119,416.25 | |
| Total Outdoor Damages: | | 199,382.97 |
| | | |
| Rooftop Lost Profits 2008 | 4,809,110.55 | |
| Rooftop Lost Profit 2009 | 796,814.84 | |
| Total Rooftop Damages: | | 5,605,925.39 |
| Total Damages | | $6,041,166.78 |

STATEMENT J

## DEFENDANT'S BRIEF SUMMARY OF ITS MOTIONS IN LIMINE

1.      Motion to Bar Daniel Graham: Filed June 12, 2009. Plaintiff failed to disclose him in sufficient time for the City to depose the witness.

2.      Motion to Bar Bernard Citron: Filed June 17, 2009.

•       Citron's purported expert testimony on aldermanic prerogative should be precluded under Fed. R. Evid. 207 and *Daubert*. It does not assist the trier of fact because Citron made no attempt to analyze the facts of this case and determine whether aldermanic prerogative is responsible for the failure of Plaintiff's applications. Such an analysis is essential, because Citron admits that aldermanic prerogative is not a hard-and-fast rule, and that applications can be approved even if the local alderman is opposed.

•       Citron's testimony is not reliable, as he is Plaintiff's attorney in related litigation, and is too biased. His opinion is based solely on his purported experience as a land use attorney, and he did not use any of the analytical tools, methods, or calculations usually used by experts. His testimony is based on a truncated data set, purporting to consist at most of only those applications he or his firm has personally handled (although he did not even review his files in connection with the report). He made no attempt to review the innumerable applications filed with the City by non-clients, or to systematically determine whether, and how often, aldermanic prerogative operates on a City-wide basis.

3.      Motion to Bar all evidence relating to the failure of the City's Plan Commission in January 2008 to approve Plaintiff's proposed Rooftop Renovations, on the grounds that all such claims are barred by res judicata or claim preclusion. Plaintiff having pursued, and obtained, reversal of the Commission's order in the Circuit Court of Cook Count, the Order of that Court is final as to all issues, causes of actions and remedies that could have been raised arising out of the same transaction or occurrence, as well as those that Plaintiff actually did raise.

(k) Statement of Outstanding Issues:

(i) Contested Statements of Fact:

1.      In the City of Chicago, it is custom and practice that the alderman of the affected ward has final authority over whether the a café permit will issue in that if the Alderman refuses to approve the permit, an ordinance will not be submitted to the city council for approving the café permit.

2.      In the City of Chicago, it is custom and practice that the alderman of the affected ward has final authority over whether permit approval will be granted by the Department of Planning and Development, Landmark's Division for proposed building improvements requiring Landmarks approval in that if the Alderman refuses to approve of the proposed building improvements, the Department of Planning and Development, Landmark's Division will not grant approval.

3.      On July 9, 2007, in a meeting at his office at 429 South Dearborn Street, Chicago, Illinois, Defendant Fioretti met with representatives of the Congress Plaza Hotel and declared that he would not issue or approve any sidewalk café permits and rooftop improvement additions for the Congress Plaza Hotel until the strike by Local 1, HEREIU was first resolved.

4.      Defendant Fioretti was strongly supported by Local 1, HEREIU in his successful Aldermanic election and has been quoted in Local 1 literature as stating "[j]ust wait until [the Congress] hotel comes to us for a variance because they want to put a luxury park or a pool on the roof ... I know they have violations in there–we'll fine them for everything!"

5. Prior to the institution of this action, the Congress Plaza Hotel had contracted to prepare plans and drawings as part of a planned improvement design to its Chicago hotel that included a sidewalk café.

6. Following Alderman Haithcock's introduction of an ordinance before the City Council authorizing the permit, the City Council of City of Chicago on June 28, 2006 granted the Congress Plaza Hotel permission and authority to use a portion of the public right-of-way adjacent to its premises for a sidewalk café.

7. On or about July 27, 2006, the City of Chicago Department of Business Affairs and Licensing issued the Congress Plaza Hotel a sidewalk café permit authorizing the hotel to operate for the period March 1, 2006 through December 1, 2006 an outdoor café on its sidewalk outside its facility at 520 S. Michigan Ave., Chicago, Illinois.

8. Shortly after the issuance of the sidewalk café permit, the Congress Plaza Hotel purchased tables, chairs and other equipment needed to operate an outdoor café and commenced operating a sidewalk café outside its facility until on or about August 28, 2006 when the City of Chicago Department of Business Affairs and Licensing cancelled the sidewalk café' permit and ordered the hotel to cease and desist the operation of the outdoor café.

9. On or about September 19, 2006, Alderman Thomas Allen, then Chairman of the City of Chicago Committee on Transportation and Public Way, submitted correspondence to City of Chicago Department of Business Affairs and Licensing, Scott V. Bruner, a letter directing Mr. Bruner to issue to the Congress Plaza Hotel a sidewalk café permit.

10. On or about October 3, 2006, the city council's Committee on Transportation and the Public Way voted not to pass the ordinance allowing the issuance of the sidewalk café permit to the Congress Plaza Hotel.

11. On or about November 7, 2007, Plaintiff submitted to the City of Chicago a sidewalk café application.

12. On or about December 6, 2007, Plaintiff submitted to the City of Chicago a sidewalk café application.

13. The City of Chicago failed to approve Plaintiff's 2007 sidewalk café applications.

14. As of the January 17, 2008 Plan Commission meeting, Alderman Fioretti publically spoke against Plaintiff's application under the Lakefront Ordinance

15. As of January 17, 2008, the date of the vote of the Plan Commission on Plaintiff's proposed rooftop additions, there were no outstanding building code charges or citations pending against or involving the Congress Plaza Hotel and there were then no findings of building code violations involving the Congress Plaza Hotel that had not been remedied.

(ii) Contested Statements of Law:

1. Defendants' actions of conditioning permit approval on the hotel's settlement of its labor dispute with Local 1 interferes with well established federal labor law policies as set forth in the NLRA which purposely calls for the resolution of labor disputes to be left to the control of the free play of economic forces.

2. Defendants' insistence on the Congress Plaza Hotel's settlement of its labor dispute with Local 1 before agreeing to issue permits to which the hotel is

3

otherwise qualified to receive has resulted in Defendants unlawfully entering into the substantive aspects of the labor dispute with Local 1 and is pre-empted by .

3. Defendants' insistence on the Congress Plaza Hotel's settlement of its labor dispute with Local 1 before agreeing to issue permits to which the hotel is otherwise qualified to receive violates the hotel's rights under the National Labor Relations Act and is unconstitutional under the Supremacy Clause of the United States Constitution.

4. Defendants' insistence on the Congress Plaza Hotel's settlement of its labor dispute with Local 1 before agreeing to issue permits to which the hotel is otherwise qualified to receive violates the hotel's Equal Protection rights under the the United States Constitution.

5. Defendants conduct of denying sidewalk cafes and rooftop were done under the "color of law."

6. Defendants conduct deprived Congress of rights, privileges, or immunities secured by the Constitution.

7. Under the color of law, Defendant Fioretti in his official capacity as Alderman of the City of Chicago, conditioned approving Plaintiff's sidewalk café applications and approval the rooftop renovations before the Plan Commission on the Congress Plaza Hotel reaching a labor agreement with the union.

8. Under the NLRA and the *Machinists* pre-emption doctrine, states and municipalities are prohibited from regulating labor dispute activities and conduct that Congress intended to be unregulated because to do so would frustrate the effective

4

implementation of the NLRA's processes and the interplay of economic and other forces and factors contemplated thereby.

**STATEMENT K**

## DEFENDANTS' CONTESTED ISSUES OF LAW AND FACT

### A. Law

1. Whether Plaintiff has a federal constitutional right to use the public sidewalk adjoining its hotel for a private café, or such a right to compel any elected City official to support legislation that benefits Plaintiff by granting it such a privilege to use the public way.

2. Whether the City's policies regarding the grant of privilege in the public way to operate a sidewalk café are as set forth in the applicable sections of the Municipal Code.

3. Whether it is consistent with national labor policy for the City to be compelled to grant Plaintiff a privilege in the public way to operate a sidewalk café in order help Plaintiff economically so that its bargaining position with its striking workers is stronger.

4. Whether any member of the City Council, or the Council as a whole, is required under federal labor laws or the federal equal protection clause, as applied to the City, to vote in favor of any particular ordinance to grant a privilege in the public way to a private business.

5. Whether the City of Chicago, or any department, agency or official of the City of Chicago, can be enjoined from violating federal law where there has been no showing that the Council as a whole, or such agency as a whole, has violated federal law.

6. Whether all evidence relating to Plaintiff's federal causes of action arising from the failure of the City's Plan Commission in January 2008 to approve Plaintiff's proposed Rooftop Renovations is barred, on the grounds that Plaintiff split the portion of its claim relating to the Commission, and obtained reversal of the Commission's order in the Circuit Court of Cook County, which order is res judicata as to all issues, causes of actions and remedies arising out of the same transaction or occurrence, as well as those that Plaintiff actually did raise.

B . **Facts**

1.    Plaintiff cannot prove that any unlawful City policy exists under *Monell* or that any unlawful action was taken by the City or a City final policymaker.

2.    Plaintiff cannot prove that any harm it suffered resulted from an unlawful City policy.

4.    Plaintiff never attempted to introduce directly to the City Council, as a private citizen, a proposed ordinance to approve a sidewalk café permit, for any year.

5.    At the public hearing on Plaintiff's Rooftop Renovations application held during the January 17, 2008 Plan Commission meeting, at least eight witnesses from the public spoke against Plaintiff's application.  No witness from the public spoke in favor of the application.

<u>Other Public Way Permits Issued to Plaintiff and Supported by Ald. Fioretti in 2008-09</u>

6.    During 2008 and 2009, Alderman Fioretti introduced, and the City Council has enacted, 11 ordinances granting Plaintiff's applications for permits to use the public way, as follows:

a)  Plaintiff's Application for a Curb Cut was signed by Ald. Fioretti on November 1, 2007, and the ordinance introduced by him was enacted by the City Council on January 9, 2008. Permit No. 1069249 was issued on March 13, 2008.

b)  Plaintiff's Application for a Vault was signed by Ald. Fioretti on November 1, 2007, and the ordinance introduced by him was enacted by the City Council on January 9, 2008. Permit No.1069250 was issued on March 13, 2008.

c)  Plaintiff's Application for a Sign was signed by Ald. Fioretti on February 1, 2008, and the ordinance introduced by him was enacted by the City Council on April 9, 2008. Permit No. 1072863 was issued on July 2, 2008.

d) Plaintiff's Application for Light Fixtures was signed by Ald. Fioretti on February 1, 2008 and the ordinance introduced by him was enacted by the City Council on April 9, 2008. Permit No. 1072867 was issued on July 2, 2008.

e) Plaintiff's Application for Bay Windows was signed by Ald. Fioretti on February 1, 2008 and the ordinance introduced by him was enacted by the City Council on April 9, 2008. Permit No. 1072868 was issued on July 2, 2008.

f) Plaintiff's Application for I-Beam was signed by Ald. Fioretti on February 1, 2008 and the ordinance introduced by him was enacted by the City Council on April 9, 2008. Permit No. 1072869 was issued on July 2, 2008.

g) Plaintiff's Application for Light Fixtures was signed by Ald. Fioretti on February 1, 2008 and the ordinance introduced by him was enacted by the City Council on April 9, 2008. Permit No. 1072872 was issued on July 2, 2008.

h) Plaintiff's Application for a Canopy (Michigan Avenue) signed by Ald. Fioretti on May 6, 2008, and the ordinance introduced by him was enacted by the City Council on June 11, 2008. Permit No. 1072827 was issued on July 2, 2008.

i) Plaintiff's Application for 19 Awnings 19 was signed by Ald. Fioretti on August 4, 2008, and the ordinance introduced by him was enacted by the City Council on October 8, 2009. Permit No. 1072891 was issued on July 2, 2008.

2006 Sidewalk Café Application

7.     A proposed ordinance that, if enacted, would have granted the Congress Hotel's 2006 application for a sidewalk café for the Congress Hotel was introduced at the City Council meeting of June 28, 2006, by Alderman Madeleine Haithcock.

8.     The proposed ordinance was referred to the City Council's Committee on

Transportation and Public Way. On July 27, 2006, the Public Way Unit of the City's Department of Business Affairs and Licensing issued a sidewalk café permit to Plaintiff "Pending Passage," which authorized the operation of the sidewalk café for the period March 1, 2006 through December 1, 2006 on the public sidewalk outside the Congress Hotel at 520 South Michigan Avenue, Chicago, Illinois.

9.      At the July 24, 2006, meeting of the Committee on Transportation and Public Way, the proposed ordinance approving Plaintiff's sidewalk was deferred; that is, no vote on it was taken, and it was not reported back to the City Council at that body's next meeting, which occurred on July 26, 2006. The proposed ordinance was not voted upon nor enacted at that City Council meeting.

10.      By letter dated August 28, 2006, the Department of Business Affairs and Licensing cancelled the "permit issued pending passage," stating that "members of the Committee of Transportation voted to defer the matter," and ordering Plaintiff to "cease and desist operation" of the sidewalk café.

11.      By letter dated September 19, 2006, Alderman Thomas Allen, Chairman of that Committee, wrote to Scott V. Bruner at the City's Department of Business Affairs and Licensing, requesting that Mr. Bruner issue to the Congress Plaza Hotel a sidewalk café permit "pending passage of this ordinance in the Committee on Transportation and Public Way. "

Damages

12.      Plaintiff cannot prove its claims for monetary damages, which are based on speculative business ventures, to the requisite degree of certainty.

13.      Plaintiff made no attempt in 2006 to determine how much profit it was losing, if any, after the sidewalk café permit was revoked.

14. Plaintiff made no attempt in 2007 to determine how much profit it was losing, if any, by not receiving a sidewalk café permit.

15. Plaintiff made no attempt in 2008 to determine how much profit it was losing, if any, by not receiving a sidewalk café permit.

16. Prior to April 2009, Plaintiff never attempted to determine how much profit it was losing, if any, by not receiving a sidewalk café permit in any prior year.

17. The first time a decision was made to estimate lost profits or revenues from not receiving a sidewalk café permit in prior years, and for not receiving approval to build the Rooftop Improvements, was in a meeting between Plaintiff and its attorneys in Spring 2009.

18. Prior to submitting, and when deciding to submit, the Rooftop Renovations application with the Plan Commission, Plaintiff did not attempt to estimate, and had no estimate of, the project's profitability and expenses, how long the project would take to build, when the project would be open to the public, and when the project would start earning revenue.

19. Prior to April 2009, Plaintiff had never attempted to estimate profits or revenues from the Rooftop Renovations.

20. Prior to mid-May 2009, Plaintiff had never interviewed any architects to prepare the building permit plans for the Rooftop Renovations.

21. Prior to and including June 3, 2009, Plaintiff had never:

 a. commissioned a study or analysis of the profitability of the Rooftop Renovations.

 b. attempted to line up financing for the Rooftop Renovations.

 c. hired an architect to prepare building permit plans for the Rooftop Improvements.

    d.      hired or interviewed a general contractor for the Rooftop Renovations.

    e.      hired or interviewed a structural engineer for the Rooftop Renovations.

    f.      attempted to estimate the costs of constructing the Rooftop Renovations.

    g.      prepared a budget for constructing the Rooftop Renovations.

    h.      determined whether the existing Hotel structure would need to be repaired or reinforced in order to build the Rooftop Renovations.

    i.      attempted to determine the costs of completing necessary repairs or reinforcements required to build the Rooftop Renovations.

    j.      estimated how long it would take to receive building permits from the City if the Rooftop Renovations application is approved by the Plan Commission.

    k.      estimated the costs of operating the restaurant and other attractions that are part of the Rooftop Renovations.

    l.      applied to the City's Buildings Department for permits under the Building Code to construct the Rooftop Renovations.

22.     Prior to and including June 3, 2009, Plaintiff did not know, and had not tried to estimate, how long it would take to build the Rooftop Renovations after receiving all necessary approvals from the City. However, in no event would it take less than 36 to 48 months.

23.     In creating in April 2009 its initial estimate of lost profits for the Rooftop Renovations, Plaintiff did not take into account local or national economic trends or downturns, including those specific to the tourism and hotel industries.

24.     The work done by A. Adkins and Associates, Inc. in connection with preparing

the Rooftop Renovations application is a sunk cost and does not represent lost profits.